Dr. Alan SHAW, Plaintiff-Appellant,

v.

The HOSPITAL AUTHORITY OF COBB COUNTY et al., Defendants-Appellees.

No. 77-3436.

United States Court of Appeals,
Fifth Circuit.

March 31, 1980.

Ingram, Flournoy, Downey, Cleveland & Still, Richard H. Still, Jr., Marietta, Ga., Werner Strupp, Washington, D. C., for plaintiff-appellant.

Pierre Howard, Jr., for Georgia Podiatry Ass'n.

Helen J. Medlin, Decatur, Ga., amicus curiae.

Sams, Dozier & Glover, A. Harris Adams, Irma B. Glover, Marietta, Ga., for defendants-appellees.

Betty Jane Anderson, American Medical Ass'n, Chicago, Ill., for American Medical Ass'n amicus curiae.

Before BROWN, HILL and RANDALL, Circuit Judges.

PER CURIAM:

We affirm for the reasons set forth in the district court's opinion and order of December 31, 1977, attached hereto as an appendix.

## APPENDIX

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DR. ALAN SHAW | ] |
| | ] |
| | ] CIVIL ACTIONS |
| | ] |
| vs. | ] NO. 18627 |
| | ] NO. 76–991A |
| | ] |
| | ] |
| THE HOSPITAL AUTHORITY | ] |
| OF COBB COUNTY, ET AL. | ] |

## ORDER

Plaintiff, a Doctor of Podiatric Medicine and Surgery licensed to practice in the State of Georgia, brought these actions for injunctive and declaratory relief against the Hospital Authority of Cobb County, Georgia and its individual members. The jurisdiction of this court is invoked pursuant to 28 U.S.C. § 1331 and 1343(3). The instant actions are presently before this court on: (1) cross-motions for summary judgment in civil action number 76–991A; (2) defendants' motion to dismiss civil action number 18627; and (3) defendants' motion to strike a portion of an affidavit filed in civil action number 76–991A. Before proceeding to the merits of these claims, a relatively brief recapitulation of the procedural history and factual circumstances underlying these actions is warranted.

Plaintiff originally brought civil action number 18627 against the Hospital Authority of Cobb General Hospital [hereinafter the "Authority"], a public hospital constructed with state and federal funds under the Hill-Burton Act, 42 U.S.C. § 291 *et seq.* Plaintiff argued in essence that he was denied substantive and procedural due process by Cobb General Hospital's by-laws [1]

which define a physician eligible for membership on the staff as one "holding a full practice license [or a duly licensed dentist].[2] In addition, plaintiff contended that he was denied equal protection of the law because a certain class of doctors with limited licenses, dentists, were afforded staff privileges while podiatrists were not.

Plaintiff's motion for an *ex parte* temporary restraining order was denied by this

1. Eligibility for membership on the Cobb General Hospital Medical-Dental staff is evaluated pursuant to the following by-laws:

   *Section 1. Nature of Medical-Dental Staff Membership*

   Membership on the Medical-Dental Staff of Cobb General Hospital is a privilege which shall be extended only to professionally competent physicians and dentists who continuously meet the qualifications, standards, and requirements set forth in these bylaws.

   *Section 2. Qualification for Membership*

   a. Only physicians and dentists licensed to practice in the State of Georgia, who can document their background, experience, training, and demonstrated competence, their good reputation, and their ability to work with others, with sufficient adequacy to assure the Medical-Dental Staff and the governing body that any patient treated by them in the hospital will be given a high quality of medical care, shall be qualified for membership on the Medical-Dental Staff. No physician or dentist shall be entitled to membership on the Medical-Dental Staff or to the exercise of particular clinical privileges in the hospital merely by virtue of the fact that he is duly licensed to practice medicine or dentistry in this or in any other state or that he is a member of some professional organization, or that he had in the past, or presently has, such privileges at another hospital.

   b. Acceptance of membership on the Medical-Dental Staff shall constitute the staff member's certification that he has in the past, and his agreement that he will in the future, strictly abide by the Principles of the Medical Ethics of the American Medical Association or the Code of Ethics of the American Dental Association, whichever is applicable, as the same are appended to and made a part of these bylaws.

   *Section 3. Conditions and Duration of Appointment*

   a. Initial appointments and reappointments to the Medical-Dental Staff shall be made by the governing body. The governing body shall act on appointments, reappointments or revocation of appointments only after there has been a recommendation from the Medical-Dental Staff as provided in these

   bylaws; provided that in the event of unwarranted delay on the part of the Medical-Dental Staff, the governing body may act without such recommendation on the basis of documented evidence of the applicant's or staff member's professional and ethical qualifications obtained from reliable sources other than the Medical-Dental Staff.

   b. Initial appointments shall be for a period extending to the end of the current Medical-Dental Staff year. Reappointments shall be for a period of not more than one Medical-Dental Staff year. For the purposes of these bylaws the Medical-Dental Staff year commences on the 1st day of June and ends on the 31st day of May of each year.

   c. Appointments to the Medical-Dental Staff shall confer on the appointee only such clinical privileges as are specified in the notice of appointment, in accordance with these bylaws.

   d. Every application for Medical-Dental Staff appointment shall be signed by the applicant and shall contain the applicant's specific acknowledgement of every Medical-Dental Staff member's obligation to provide continuous care and supervision of his patients, to abide by the Medical-Dental Staff bylaws, rules and regulations, and to accept committee assignments, and to participate in staffing the emergency service.

2. It is clear under the law of Georgia that a podiatrist does not hold a full practice license because he may not perform amputations or administer general anesthesia. Specifically, Ga.Code § 84–601 states that:

   "Podiatry" (chiropody), for the purpose of this Chapter, means the diagnosis, medical, surgical, mechanical, manipulative and electrical treatment limited to the ailments of the human foot and leg. No podiatrist shall do any amputation or use any anesthetic other than local.

   "Podiatrists shall not be deemed to be included in the expressions "licensed doctors of medicine," "doctors of medicine," "doctors of medicine licensed to practice in this State" and the like.

court on July 18, 1973. The temporary and permanent injunction requests were joined for the purposes of a hearing which was held on August 21, 1973. In this court's order of October 24, 1973, we found that the acts of the Hospital Authority as they pertain to the public hospital here in question were state acts subject to the provisions of the Fourteenth Amendment. *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173 (5th Cir. 1971); *Foster v. Mobile County Hospital Board*, 398 F.2d 227 (5th Cir. 1968). However, we also held that each of plaintiff's claims were without merit and accordingly dismissed the action.

Plaintiff appealed to the United States Court of Appeals for the Fifth Circuit which vacated our order and remanded the action for further proceedings not inconsistent with its opinion. The majority opinion written by Judge Bell for a panel of the Court of Appeals agreed with this court's determination that plaintiff's equal protection claim had no merit.[3] Specifically, the Court of Appeals concluded that the class which plaintiff advocated consisting on one hand of full practice physicians and dentists and on the other of podiatrists

> is too large to be meaningful and we are unable to equate the various branches of the healing arts which would necessarily be included. Therefore, we reject appellant's equal protection claim. The facts simply do not make out a case of persons similarly situated within the equal protection clause treatment requirement" that all persons similarly circumstanced shall be treated alike" [citations omitted].

*Shaw v. Hospital Authority of Cobb County, supra*, at 628.

With respect to plaintiff's due process arguments, the Court of Appeals clearly held that plaintiff had been deprived of and was now entitled to procedural due process consisting of a hearing before both the Medical-Dental Staff [hereinafter the "Staff"] and the Hospital Authority[4] which would be conducted upon the proper legal standard, i. e. plaintiff's liberty interest. In somewhat more careful terms the Court of Appeals intimated in footnote 2 of its opinion that regardless of how plaintiff's claim was characterized, *compare Woodbury v. McKinnon*, 447 F.2d 839 (5th Cir. 1971) *with Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the essential inquiry concerned whether Dr. Shaw had a liberty interest protected by the Fourteenth Amendment. *Shaw v. Hospital Authority of Cobb County, supra* at footnote 2. This language is somewhat disturbing in that the Court of Appeals had already found a liberty interest of sufficient dimension to trigger procedural due process safeguards. Therefore, plaintiff's substantive due process claim would appear to turn upon the breadth rather than the existence of a liberty interest. In any event, Judge Brown's concurring opinion fleshes out footnote 2 by commenting that "in the procedural due process hearing, the intrinsic reasonableness of the regulation is the principal matter for inquiry." *Id.* at 629.

Since plaintiff was afforded a hearing before the Staff and the Authority subsequent to the Court of Appeals mandate, we believe our responsibility entails: (1) examining the "procedural due process hearing" to determine whether it comported with the appellate mandate; and (2) deciding whether the Authority properly determined that the regulations in question are rationally

---

**3.** In a concurring opinion, Chief Judge Brown expressed the somewhat different view that if "[t]he due process hearing [were] . . . conducted with due process, . . . [it might] precipitate a serious question of equal protection. *Shaw v. Hospital Authority of Cobb County*, 507 F.2d 625, 629 (1975).

**4.** The Medical-Dental Staff and the Hospital Authority have separate by-laws. As the Court of Appeals observed, there was no showing

made at the hearing of this action that amendment of the former would automatically result in every instance in a change in the latter. Therefore, the Court of Appeals found that the broad delegation power of the Hospital Authority, *see Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173 (1971), did not encompass the power to have the Medical-Dental Staff and only that group review plaintiff's application.

based and reasonably related to a legitimate state purpose. *See Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Cf. Hayman v. Galveston*, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927). However, one preliminary matter deserves more immediate attention.

## DEFENDANTS' MOTION TO DISMISS

Defendants' motion to dismiss civil action number 76–991A [hereinafter "*Shaw II*"] is based upon the "pendency" of a previous action, civil action number 18627 [hereinafter "*Shaw I*"]. Defendant argues in essence that *Shaw I* was remanded for further proceedings not inconsistent with the Court of Appeals' opinion and is still pending before this court. Apparently the Clerk of this Court is of essentially the same opinion because *Shaw I* is still numbered among the open files. Plaintiff in turn argues that the Court of Appeals vacated *Shaw I* and remanded the action to the Authority and Staff rather than to this court, thereby necessitating the filing of a new civil action upon completion of the administrative process. Although the judgment entered in *Shaw I* by the Court of Appeals states that the action was remanded to this court, we believe that it is in error because the appellate court clearly envisioned further administrative proceedings. In any event, the parties essentially agree that *Shaw I* and *Shaw II* encompass the same issues and should not both be presently pending before this court. Therefore, we concur in plaintiff's view that *Shaw I* should be closed yet subject to judicial notice by this court.

Accordingly, for the reasons hereinabove expressed, *Shaw v. The Hospital Authority of Cobb County*, C.A. No. 18627 is hereby ORDERED to be DISMISSED.[5]

## CROSS–MOTIONS FOR SUMMARY JUDGMENT

Plaintiff argues that the Staff and Authority failed to comply with the appellate mandate by providing plaintiff with a procedural due process hearing directed to his underlying "liberty interest." Defendant in turn argues that plaintiff's liberty interest need only be considered at the outset in order to determine whether plaintiff is entitled to a procedural due process hearing and that it has little residual vitality in substantive due process terms. In any event, defendants argue that the hearing held before the Staff and the Authority were full and fair and therefore pretermitted the substantive due process issue.

It is clear in the first instance that plaintiff has a "liberty interest" of some dimension emanating from his state created right to practice podiatry. *See generally, Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1973). However, that state created right does not in and of itself confer an absolute constitutional right upon plaintiff to practice at a public facility such as Cobb General Hospital. *Hayman v. Galveston*, 273 U.S. 414, 47 S.Ct. 363, 71 L.Ed. 714 (1927); *Sosa v. Board of Managers*, 437 F.2d 173 (5th Cir. 1971). Instead that liberty interest dictates that plaintiff's rights may only be restricted upon a showing that: (1) he was given an adequate procedural due process hearing; and (2) any decision to abridge plaintiff's liberty interest was grounded upon a rational basis designed to further a legitimate state interest. *See Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Regardless of how the latter issue is characterized, it is clear that the essential inquiry concerns the reasonableness of the restriction imposed by the state instrumentality. *Shaw v. Hospital Authority of Cobb County, supra*.

In general, the form of a procedural due process hearing is judged by a flexible standard which expands and contracts according to the nature of the interest in question. *Board of Regents v. Roth, supra, Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Woodbury v. McKinnon*, 447 F.2d 839 (5th Cir. 1971).

---

**5.** Although defendants moved to dismiss *Shaw II*, we believe that they were concerned largely with the pendency of two actions. Therefore, it is proper to redirect their motion to dismiss and grant it with respect to *Shaw I*.

However, in the instant action, the Court of Appeals was more specific and plainly stated that the plaintiff "[was] entitled to a hearing [before the Staff *and* the Authority] conforming to the minimal requirements of procedural due process of notice and an opportunity to be heard." *Shaw v. Hospital Authority of Cobb County, supra* at 628. On July 17, 1975 plaintiff appeared at a hearing of a special committee of the Medical-Dental Staff of Cobb General Hospital at which the reasonableness of the subject by-laws was explored and the decision was made not to amend them. On October 15, 1975 the Hospital Authority, largely as a procedural step, accepted the recommendation of the Medical-Dental Staff and informed plaintiff of his right to a hearing before the Authority. On February 4, 1976, the Hospital Authority held a hearing and subsequently declined to amend its by-laws. In both instances, plaintiff was not only afforded notice and an opportunity to be heard, *see Grannis v. Ordean*, 234 U.S. 385, 34 S.Ct. 779, 58 L.Ed. 1363 (1914), but also accepted the right to appear personally and through counsel to present, confront, and cross-examine witnesses, *see Willner v. Committee on Character and Fitness*, 373 U.S. 96, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Greene v. McElroy*, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), and to answer questions raised by members of the respective boards. Moreover, plaintiff's counsel specifically disclaimed any belief that members of the Authority might be biased. Finally, the Authority spent approximately *three hours hearing plaintiff's* claims and actively and aggressively questioned plaintiff during a significant portion of that time. Following the hearings, plaintiff was given a three page examination of the reasons for the denial of his application. Therefore, it appears that these proceedings were "meaningful", *Armstrong v. Manzo*, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965) and comported with the minimum requirements of procedural due process. Accordingly, we must proceed to consider the concomitant question of whether the Authority was justified in concluding that the by-laws represented a reasonable encroachment upon plaintiff's liberty interest. *Shaw v. Hospital Authority, supra.*

██ It is clear in the first instance that the Authority has wide discretion in selecting persons for staff positions at Cobb County Hospital. *Sosa v. Board of Managers of Val Verde Memorial Hospital*, 437 F.2d 173 (5th Cir. 1971). In addition, it is clear that the authority did not violate the precise wording of the Guidelines of the Joint Commission on Accreditation of Hospitals by denying plaintiff's request for staff privileges because the guidelines provide that "[t]he governing body of the hospital . . . *may* grant clinical privileges to qualified, licensed podiatrists . ." (Emphasis added). The more difficult question is whether the by-laws are "reasonably related to the operation of the hospital." *Sosa v. Board of Managers of Val Verde Memorial Hospital, supra.* Defendants argue that it is their paramount purpose to provide the best possible services to the public within the confines of the limited resources available to the Authority. Toward this end they have devised by-laws which allow staff membership at Cobb General Hospital by persons with unrestricted licenses and dentists. Dentists are allowed on the staff because none of the doctors with unrestricted licenses typically engage in dental medicine. However, there was testimony given at the hearing before the Authority by Dr. Marvin N. Mitchell, an orthopedic surgeon that all of the functions performed by a podiatrist may be performed by an orthopedic surgeon. In addition, Dr. Mitchell's self-serving, albeit well-reasoned, testimony suggested that orthopedic surgeons as a group can better serve the needs of the "whole patient" by diagnosing and treating physical and emotional causes which manifest themselves in terms of foot and leg disorders. Finally, defendants pointed out at the hearing held before the Authority that the term "podiatrist" simply is short hand for a variety of training which differs from that of an orthope-

dic surgeon in that the former has two years of residency while the latter has a year of internship and four years of residency.[6] Plaintiff argues that podiatric training concentrates solely upon the leg and foot and therefore students receive more intensive and lengthy instruction in that particular portion of the human anatomy than do orthopedists. However, this rationale fails to speak to the question of whether, given the choice between placing a podiatrist or an orthopedic surgeon in the staff, the Authority made a rational decision in selecting only orthopedic surgeons who were qualified to treat the entire patient in any set of forseeable or unforseeable circumstances. Training is one of those relevant professional qualifications "which may be constitutionally applied in determining the class of people who are eligible to practice medicine in a public hospital." *Foster v. Mobile Hosp. Bd.*, 398 F.2d 227, 230 (5th Cir. 1968). Accordingly, we conclude that defendant's decision was founded upon a rational basis.

Two final observations are warranted. First, although considerations as to whether plaintiff may practice medicine at other hospitals is not strictly relevant to the issue of his liberty interest in practicing at defendant's public hospital, it is nevertheless clear that plaintiff is not being deprived of his livelihood by being denied staff rights at Cobb County Hospital. Rather, plaintiff testified that he practiced at his own offices as well as at several accredited hospitals in Cobb County, Georgia and other portions of the Atlanta metropolitan area.

Second, although we have repeatedly observed that podiatry is indeed a honorable profession, there remains a considerable amount of disagreement within the medical community as to the role which podiatrists should play in providing medical services to the American public. Evidently a tempo-rary compromise was struck by the Joint Commission on Accreditation of Hospitals by permitting but not requiring hospitals to place on staff doctors in the emerging area of podiatric medicine. In the absence of a showing that the denial of staff privileges was not rationally based, *see Sosa v. Board of Managers of Val Verde Memorial Hosp., supra*, or that it was precipitated by invidious racial discrimination, *see Foster v. Mobile County Hospital Board, supra*, it is not the province of this court to legislate the final resolution of a problem indigenous to the medical profession.

Accordingly, for the reasons hereinabove expressed, defendants' motion for summary judgment is hereby GRANTED and plaintiff's motion for summary judgment is hereby DENIED. Moreover, because the action is closed by this order, defendant's motion to strike is hereby DENIED as MOOT.

In sum, this court has today: (1) DISMISSED civil action number 18627; (2) GRANTED defendants' motion for summary judgment and DENIED plaintiff's motion for summary judgment in civil action number 76–991A; and (3) DENIED as MOOT defendants' motion to strike a portion of an affidavit filed in civil action number 76–991A.

IT IS SO ORDERED.

This, the 31 day of October, 1977.

S/ Richard C. Freeman

RICHARD C. FREEMAN
UNITED STATES
DISTRICT JUDGE

---

6. Plaintiff testified that there is no longer any "internship" in podiatric training because the term internship by definition denotes a short period of exposure to a variety of areas of medical practice whereas podiatry concentrates exclusively on leg and foot treatment.