875 F.2d 1529
 58 USLW 2041, 1989-1 Trade Cases 68,644
 Mahfouz El SHAHAWY, M.D., M.S., F.A.C.C. Individually and
Mahfouz El Shahawy, M.D., P.A., a Florida
Professional Association, Plaintiffs-Appellants,
v.
William T. HARRISON, Jr., Individually, F. Edwards Rushton,
M.D., Individually, et al., Defendants-Appellees.
 No. 87-3408.
 United States Court of Appeals,
Eleventh Circuit.
 June 27, 1989.
 
 Bailey & Hunt, a Professional Ass'n, Jesse C. Jones, Stephen E. Nagin, Law Office of Stephen Nagin, Miami, Fla., for plaintiffs-appellants.
 Mike Piscitelli, C. Lawrence Stagg, Dennis R. Ferguson, Stagg, Hardy & Yerrid, P.A., Tampa, Fla., James Burgess, Syprett, Meshad, Resnick & Lieb, Sarasota, Fla., for Sarasota County Hosp. Bd., Harrison, Bowman, Matthews, Floyd, Rard, French and Tollerton.
 Richard Garland, Dickinson, O'Riorden, Gibbons, Quale, Shields and Carlton, P.A., G. Hunter Gibbons, Claire Hamner, Sarasota, Fla., for Rushton, Carlson, Page, Sarkis, Silverstein, Stutz, Ronnuswamy, Natarajan, Mathews, Myers, Chidsey & Fleegler.
 Donald W. Stanley, Marlow, Shofi, Smith, Hennen, Smith & Jenkins, Tampa, Fla., for David Bowman.
 Mary Lau, Lau, Lane, Pieper & Asti, P.A., Tampa, Fla., for Delmastro.
 Frank Strelec, Dart, Ford, Strelec, Spivey & Bennett, Sarasota, Fla., for C. Ted French.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HATCHETT and EDMONDSON, Circuit Judges, and MARKEY*, Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 Antitrust, civil rights, and defamation rulings are reviewed in this case arising from a public hospital board's termination of a physician's medical staff membership and other privileges. We affirm in part and reverse in part.
 
 I. FACTS
 
 2
 In November, 1982, appellants, Mahfouz El Shahawy and his medical association, brought this action against the Sarasota County Public Hospital Board, the hospital's medical review committee members, and physicians on the hospital's staff. The lawsuit resulted from the hospital board's denial of Shahawy's request for cardiac catheterization laboratory privileges, and alleged antitrust, civil rights, racketeering, and state common law violations. The district court dismissed Shahawy's original and amended complaints for failure to state federal claims for relief.
 
 
 3
 Shahawy appealed the district court's dismissal of his claims. In Shahawy v. Harrison, 778 F.2d 636 (11th Cir.1985), modified, 790 F.2d 75 (11th Cir.1986), we affirmed in part, reversed in part, and remanded the lawsuit for further consideration. In doing so, we held that Shahawy's antitrust counts sufficiently alleged that the appellees' business activities had a substantial impact on interstate commerce. Shahawy I, 778 F.2d at 641. In addition, because we found that Shahawy had no constitutionally protected property or liberty interest in cardiac catheterization laboratory privileges, we held that the district court properly dismissed Shahawy's civil rights counts. Shahawy I, 778 F.2d at 644. We also held that the district court had not abused its discretion by dismissing Shahawy's pendent state law claims. Shahawy I, 778 F.2d at 644.
 
 
 4
 Between the time of the district court's dismissal of Shahawy's original complaint and this court's ruling on appeal, the hospital board declined to renew Shahawy's medical staff privileges. Consequently, following remand, Shahawy amended his complaint to allege a denial of his constitutional rights based on the termination of his medical staff privileges, and renewed the antitrust, civil rights, RICO defamation, and state law claims.
 
 
 5
 As to the amended complaint, the district court granted the appellees' motions for summary judgment on the racketeering, section 1985, and antitrust claims (exclusion from catheterization laboratory counts). The district court denied the motions for summary judgment on Shahawy's section 1983 count based on the termination of his staff privileges. The district court also denied his state law claims for defamation and tortious interference with reasonable business expectations. Following trial, the district court directed a verdict in favor of all appellees on all counts.
 
 
 6
 On appeal, Dr. Shahawy contends that the district erred 1) by granting summary judgment in favor of the appellees on his antitrust claim; and 2) by granting the appellees' motions for directed verdicts on the civil rights and defamation claims.
 
 II. CIVIL RIGHTS VIOLATIONS
 
 7
 Relying upon the medical staff bylaws, and Fla.Stat. Sec. 395.0115, Shahawy contends that he had a legitimate claim of entitlement to a continuation of medical staff privileges, and such entitlement could not be properly terminated or impaired without compliance with substantive and procedural due process. The appellees contend that the hospital board constitutes a quasi-judicial body, the members of which are entitled to absolute immunity. Alternatively, the appellees contend that Dr. Shahawy has been afforded the full panoply of procedural due process protections, and the district court properly granted a directed verdict in their favor.
 
 
 8
 We may reverse the district court's order only if we find "substantial evidence, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach differing conclusions, [specifically conclusions] opposing the motion for directed verdict." Benson v. Coca-Cola Co., 795 F.2d 973, 975 (11th Cir.1986) (quoting Worsham v. A.H. Robins Co., 734 F.2d 676 (11th Cir.1984)). "A mere scintilla of evidence is insufficient to present a question for the jury; there must be a conflict in substantial evidence to create a jury question." Kaye v. Pawnee Constr. Co., 680 F.2d 1360 (11th Cir.1982).
 
 
 9
 As we stated in the prior appeal of this case when discussing Dr. Shahawy's civil rights claims based on the hospital board's denial of cardiac catheterization laboratory privileges, in order to have a federally-protected property interest,
 
 
 10
 [A] person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it....
 
 
 11
 ... Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.
 
 
 12
 Shahawy I, 778 F.2d at 642 (quoting Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).
 
 
 13
 In Northeast Georgia Radiological Associates v. Tidwell, 670 F.2d 507 (5th Cir. Unit B 1982), we held that a physician had a constitutionally-protected property interest in medical staff privileges where, among other things, the medical staff's bylaws detailed an extensive procedure to be followed when corrective action against a medical staff physician was warranted. Tidwell, 670 F.2d at 511. Applying the same rationale here, we hold that Dr. Shahawy has a constitutionally-protected property interest in medical staff privileges. Here, as in Tidwell, the medical staff bylaws establish specific standards and procedures to be applied when considering the suspension, denial, or revocation of the staff privileges of any member. Our decision recognizing Dr. Shahawy's property interest is consistent with well-established precedent in this circuit which recognizes a physician's medical staff privileges as a property interest protected by the fourteenth amendment. See, e.g., Shaw v. Hospital Authority of Cobb County, 507 F.2d 625 (5th Cir.1975), aff'd on reh'g, 614 F.2d 946 (5th Cir.1980); Woodbury v. McKinnon, 447 F.2d 839 (5th Cir.1971); see also Palm Beach-Martin County Medical Center, Inc. v. Panaro, 431 So.2d 1023 (Fla.Dist.Ct.App.1983); Carida v. Holy Cross Hospital, Inc., 427 So.2d 803 (Fla.Dist.Ct.App.1983).
 
 
 14
 Having found a property interest, we now consider whether Dr. Shahawy was afforded procedural due process when medical staff privileges were terminated. It is settled that "the categories of substance and procedure are distinct." Cleveland Board of Education v. Loudermill, 470 U.S. 532, 541, 105 S.Ct. 1487, 1492, 84 L.Ed.2d 494 (1985). Although a state may elect not to confer a property interest in employment, "it may not constitutionally authorize the deprivation of such an interest, once conferred, without appropriate procedural safeguards." Arnett v. Kennedy, 416 U.S. 134, 167, 94 S.Ct. 1633, 1650, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part and concurring in result in part). In Tidwell, we stated that "[m]edical staff privileges embody such a valuable property interest that notice and hearing should be held prior to [their] termination or withdrawal, absent some extraordinary situation where a valid government or medical interest is at stake." Tidwell, 670 F.2d at 511.
 
 
 15
 A fundamental principle of procedural due process is that a person be given a pre-termination hearing prior to being deprived of any significant property interest. Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971). Although a pre-termination hearing is generally favored, the extensiveness of such a hearing depends upon a balancing of competing interests. Such interests as retaining gainful employment must be balanced against the governmental interest in the expeditious removal of unsatisfactory employees and the need to avoid erroneous termination decisions.
 
 
 16
 The record shows that Dr. Shahawy has been afforded the full panoply of due process protections. As the district court observed when granting the appellees' motions for directed verdicts:
 
 
 17
 As to the board hearing on October 1983 at which time the plaintiff's staff privileges were terminated, the Court finds that the plaintiff was given adequate notice of the proceeding and the matters to be considered, that the plaintiff was, in fact, present and well represented by counsel of his own choosing at the hearing, that the plaintiff availed himself of the opportunity to confront and cross-examine all witnesses who testified against him, that the plaintiff did present witnesses and evidence on his own behalf and those witnesses and evidence were received and the testimony considered by the Board. That comports with the broadest notions of procedural due process.
 
 
 18
 In Woodbury v. McKinnon, 447 F.2d 839 (5th Cir.1971), a case involving the termination of a physician's surgical privileges, the former Fifth Circuit held that the physician had been afforded full due process protections, notwithstanding the fact that he was given an informal medical staff hearing at which no witnesses were presented nor cross-examination allowed. Woodbury, 447 F.2d at 844. In contrast to the facts of Woodbury, not only was Dr. Shahawy given notice and time to prepare for the October, 1983, board meeting, but more importantly, he presented evidence and cross examined witnesses. Accordingly, we hold that Dr. Shahawy was not denied procedural due process in connection with the October, 1983, hospital board meeting.
 
 
 19
 Dr. Shahawy further contends that the hospital board's decision to terminate his medical staff privileges was arbitrary, capricious, and discriminatory; therefore, it violated his right to substantive due process of law. In Sosa v. Board of Managers of Val Verde Memorial Hospital, 437 F.2d 173 (5th Cir.1971), the former Fifth Circuit noted that hospital boards possess broad discretion with regard to the procedures and policies to be followed in admitting physicians to its staff. Sosa, 437 F.2d at 177. Accordingly, our role on review of such actions is not to substitute our judgment for that of the hospital's governing board or to reweigh the evidence regarding the renewal or termination of medical staff privileges. Rather,
 
 
 20
 the court is charged with the narrow responsibility of assuring that the qualifications imposed by the Board are reasonably related to the operation of the hospital and fairly administered. In short, so long as staff selections are administered with fairness, geared by a rationale compatible with hospital responsibility, and unencumbered with irrelevant considerations, a court should not interfere.
 
 
 21
 Sosa, 437 F.2d at 177. We hold that under the Sosa standards, substantial competent evidence supports the hospital board's decision to terminate Dr. Shahawy's medical staff privileges.
 
 III. DEFAMATION
 
 22
 Dr. Shahawy further contends that the district court erred by granting the appellees' motions for directed verdicts on the defamation claim. This claim is based upon documents generated in various medical review committees, the hospital board, and transcripts and exhibits used in meetings of medical review committees. In addition, Dr. Shahawy alleges that defamation resulted from statements made by a colleague, a Dr. Tollerton, to the wife of one of Dr. Shahawy's patients. In reviewing Dr. Shahawy's claims of defamation, we begin with section 768.40, Fla.Stat. (1983), the relevant portion of which reads as follows:
 
 
 23
 (2) There shall be no monetary liability on the part of, and no cause of action for damages shall arise against, any member of a duly appointed medical review committee ... if the committee member or health care provider acts without malice or fraud. The immunity provided to members of a duly appointed medical review committee shall apply only to actions by providers of health services, and in no way shall this section render any medical review committee immune from any action in tort or contract brought by a patient or his successors or assigns.
 
 
 24
 ....
 
 
 25
 (4) The proceedings and records of committees as described in the preceding subsections shall not be subject to discovery or introduction into evidence in any civil action against a provider of professional health services arising out of the matters which are the subject of evaluation and review by such committee....
 
 
 26
 Fla.Stat. Sec. 768.40(2), (4). The Supreme Court of Florida recently held in Feldman v. Glucroft, 522 So.2d 798 (Fla.1988), that a defamation action may be brought under section 768.40(2) when evidence establishes that the committee member acted maliciously or fraudulently. Dr. Shahawy has offered no evidence other than a conclusory statement that "[t]he malice in the peer review reports is demonstrated in the blatant unfairness of the proceedings and the overt hostility expressed at the hearings." This conclusory accusation is not sufficient to overcome the qualified privilege provided in section 768.40. Moreover, Dr. Tollerton's statements are the subject of a qualified privilege because they were made in response to a question by the wife of one of Dr. Shahawy's patients concerning Dr. Shahawy's treatment of her husband. This lawsuit is brought by Dr. Shahawy, a health care provider.
 
 
 27
 Under Florida law, in order to overcome a qualified privilege, the plaintiff must demonstrate express malice. Nodar v. Galbreath, 462 So.2d 803, 809 (Fla.1984). Dr. Shahawy has failed to carry this burden. Accordingly, we hold that the district court properly granted the appellees' motions for directed verdicts on Dr. Shahawy's defamation claim.
 
 IV. ANTITRUST
 
 28
 The district court granted the hospital board summary judgment on Dr. Shahawy's antitrust claim because it concluded that the "state action" doctrine immunized the hospital board from federal antitrust liability. According to the district court, Florida's peer review system satisfies the two prerequisites for invoking the state action immunity defense: (1) the state clearly articulated the challenged restraint as state policy, and (2) the state actively supervises the challenged anticompetitive conduct. See Parker v. Brown, 317 U.S. 341, 351, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943); California Liquor Dealers v. Midcal Aluminum, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980). Because we disagree with the district court's conclusion that Florida actively supervises the peer review process, we conclude that the state action doctrine does not immunize the hospital board from Dr. Shahawy's antitrust claim. Therefore, we reverse the district court's grant of summary judgment.
 
 
 29
 The state action doctrine exempts the state, and private entities performing state functions, from liability under the Sherman Antitrust Act. As the district court explained, this doctrine applies only if a state has clearly articulated a challenged restraint as state policy and the state actively supervises the challenged restraint. Because we conclude that Florida's peer review system fails to actively supervise the hospital board's decisions, we limit our discussion to this prong.
 
 
 30
 The Supreme Court recently held that a similar medical peer review system in Oregon did not satisfy the active supervision requirement. Patrick v. Burget, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988). The Patrick Court concluded that Oregon did not satisfy the active supervision prong because the state did not exercise "ultimate control" over the challenged anticompetitive conduct.
 
 
 31
 First, the Court held that no state agency or official provided the requisite supervision. The Court noted that Oregon's statutory scheme merely authorized state agencies to review the termination procedures and to regulate the licensing of physicians. Patrick, 486 U.S. at ----, 108 S.Ct. at 1664, 100 L.Ed.2d at 93. The Court found such review insufficient because the statute did not authorize the agencies to review the peer review board's decisions. Patrick, 486 U.S. at ----, 108 S.Ct. at 1664, 100 L.Ed.2d at 93.
 
 
 32
 Second, the Court held that Oregon's judicial system did not actively supervise the board's decisions. The Court found that the Oregon courts only ensured that (1) the peer review board followed a reasonable procedure and that (2) sufficient evidence existed to find that a terminated physician's conduct threatened such physician's patients. According to the Court, this review "falls short of satisfying the active supervision requirement." Patrick, 486 U.S. at ----, 108 S.Ct. at 1664-65, 100 L.Ed.2d at 94.
 
 
 33
 Based on Patrick, we initially conclude that no Florida agency or official actively supervises the peer review process. Florida Statutes Chapter 395, a comprehensive scheme regulating health care, delineates the scope of state involvement in the medical peer review process. The state of Florida requires all licensed facilities to set procedures and standards for determining staff membership and clinical procedures. Fla.Stat.Ann. Sec. 395.011(6) (West 1986). A licensed facility which denies staff membership or clinical privileges must provide an applicant with written reasons for such denial. Fla.Stat.Ann. Sec. 395.011(7) (West 1986). Furthermore, a hospital board must report any denial of staff membership or clinical privileges to the state licensing board. Fla.Stat.Ann. Sec. 395.011(7) (West 1986). Despite this abundance of statutes, one critical element is lacking, i.e., no state official reviews specific peer review board decisions regarding clinical privileges to determine whether such decisions comport with state policy. See Patrick, 486 U.S. at ----, 108 S.Ct. at 1664, 100 L.Ed.2d at 93 (no active supervision where agencies do not review merits of decisions to ensure conformity with state policy). In fact, the district court specifically found that the Oregon statutes provided for more active supervision than the Florida statutes.[1] Therefore, no Florida official or agency provides the requisite supervision.
 
 
 34
 Similarly, the Florida courts' limited examination of the peer review process does not satisfy the active supervision requirement. Under Patrick, a state's judicial system does not actively supervise a peer review system if the courts do not review the peer review board's decisions to determine such decisions' consistency with the state's regulatory policy. Patrick, 486 U.S. at ----, 108 S.Ct. at 1664-65, 100 L.Ed.2d at 94. The Florida courts do not review the hospital boards' decisions to make such a determination. Rather, the Florida courts merely review the board's decisions for procedural error and insufficient evidence. See, e.g., Horgan v. South Broward Hospital District, 477 So.2d 617 (Fla.Dist.Ct.App.1985) (sufficient evidence supports board's decision); Dance v. North Broward Hospital District, 420 So.2d 315 (Fla.Dist.Ct.App.1982) (board used fair procedures to reach its decision); Sarasota County Public Hospital Board v. Shahawy, 408 So.2d 644 (Fla.Dist.Ct.App.1981) (board's decision making criteria consistent with state policy). Furthermore, the Florida courts expressly advocate judicial restraint in this area, viewing judicial intervention as necessary or appropriate only when a peer review board uses unfair or unreasonable procedures, or when a board arbitrarily and capriciously applies its procedures. See Dance, 420 So.2d at 316. Such review mirrors the Oregon courts' review which the Patrick Court found insufficient to constitute active supervision. Patrick, 486 U.S. at ----, 108 S.Ct. at 1664, 100 L.Ed.2d at 93 (Oregon courts do not actively supervise because they limit review to search for reasonable procedures and sufficient evidence).
 
 
 35
 This lack of direct review of the peer review boards' decisions mandates the conclusion that Florida does not actively supervise the medical peer review system. Because the district court relied on the state action immunity doctrine in granting the hospital board's motion for summary judgment, we reverse the district court's dismissal of Dr. Shahawy's antitrust claim.
 
 V. CONCLUSION
 
 36
 We affirm the district court's grant of a directed verdict to the appellees on Dr. Shahawy's civil rights and defamation claims. We reverse, however, the district court's grant of summary judgment to the appellees on his antitrust claim. Accordingly, the decision of the district court is affirmed in part and reversed in part.[2]
 
 
 37
 AFFIRMED in part and REVERSED in part.
 
 
 
 *
 Honorable Howard T. Markey, Chief U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 In reaching this conclusion, the district court relied on the Ninth Circuit Court of Appeals decision in Patrick which the Supreme Court ultimately reversed. See Patrick v. Burget, 800 F.2d 1498 (9th Cir.1986), rev'd, Patrick v. Burget, 486 U.S. 94, 108 S.Ct. 1658, 100 L.Ed.2d 83 (1988)
 
 
 [2]
 All pending motions are denied