In the

# United States Court of Appeals

## For the Seventh Circuit

No. 15-1816

WILLIAM I. BABCHUK, *et al.*,

*Plaintiffs-Appellants*,

*v.*

INDIANA UNIVERSITY HEALTH, INC., *et al.*,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-01376-JMS-DML — **Jane E. Magnus-Stinson**, *Judge*.

ARGUED OCTOBER 2, 2015 — DECIDED JANUARY 11, 2016

Before POSNER, SYKES, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. Dr. William Babchuk, a radiologist, brought this suit against Indiana University Health Tipton Hospital, Inc. (Tipton Hospital for short), under 42 U.S.C. § 1983, which creates a federal remedy for violations of constitutional rights by what are called "state actors." See *West v. Atkins*, 487 U.S. 42, 49–50 (1988). In 2003 Tipton awarded Babchuk medical staff privileges, and either then or later also gave his professional corporation an exclusive contract to

provide radiology services at the hospital. The suit charges that the hospital and its administrators deprived him of property without due process of law, in violation of the Fourteenth Amendment, when in 2012 it cancelled both his medical privileges and his corporation's contract. His professional corporation is an additional plaintiff. The defendants include besides Tipton Hospital the hospital's owner, Indiana University Health, Inc., plus some persons employed by the corporate defendants—but we can ignore those persons.

The district judge granted summary judgment in favor of all the defendants. She reasoned that the plaintiffs had failed to prove they had a federally protected property interest in Dr. Babchuk's hospital privileges or in the contract between his professional corporation and the hospital. An alternative ground for affirmance urged by the defendants is that the conduct of which Babchuk complains is not state action and is therefore not actionable under 42 U.S.C. § 1983.

The hospital's medical-staff bylaws provide that a physician's privileges may be summarily suspended "whenever action must be taken immediately in the best interest of patient care or … the failure to take prompt action may result in imminent danger to the life, health, or safety of any such person in the Hospital … and such summary suspension shall become effective immediately upon imposition." In June 2012 Dr. Babchuk's staff privileges, and thus his authority to provide medical services at the hospital, were summarily suspended by a four-member peer review committee (although the bylaws required only a three-member committee) on the ground that he had delayed for eight days in dictating a report on the result of an ultrasound performed on a

patient in the hospital's emergency room. The hospital de-fendants claim that the patient had been in the thirtieth week of her pregnancy when she arrived in the emergency room and that shortly after she had the ultrasound she was trans-ferred by ambulance to another hospital, where she gave birth prematurely. During the eight days in which Dr. Bab-chuk was dithering, he allegedly had instructed members of the hospital's staff to make the ultrasound results "go away" or (what amounts to the same thing) delete the record of the results of the ultrasound. Dr. Babchuk disputes these allega-tions.

The summary suspension of his privileges was quickly followed by the cancellation of his professional corporation's contract with the hospital. And the following month (July 2012) the hospital's Medical Executive Committee voted to continue Babchuk's suspension. A hearing before an ad hoc committee was held in October at Babchuk's request. The committee voted unanimously to make the suspension per-manent. Babchuk was told he could appeal the committee's decision to the hospital's board of directors, but he declined to do so, and so the cancellation of his medical privileges was made permanent.

His principal argument is that by reporting the suspen-sion of his medical privileges to Indiana's medical licensing board and the National Practitioner Data Bank, as required by both federal and Indiana law, see 42 U.S.C. §§ 11133(a)(1)(A), 11134(c)(2); 45 C.F.R. § 60.12; Ind. Code § 16-21-2-6, the hospital had "blemished" his medical license and by doing so had deprived him of property. A medical license is deemed property within the meaning of the due process clause if state law not only creates an entitlement to

the license but also establishes criteria for imposing professional discipline should the license be abused by its holder. See *Fleury v. Clayton*, 847 F.2d 1229, 1232 (7th Cir. 1988); *Abcarian v. McDonald*, 617 F.3d 931, 942 (7th Cir. 2010); cf. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972); *Cain v. Larson*, 879 F.2d 1424, 1426–27 (7th Cir. 1989). But a harm to reputation caused by a state official's statements is a denial of due process only if the harm is to an interest that the law recognizes as an interest in property. See *Paul v. Davis*, 424 U.S. 693, 701–12 (1976).

If possession of a medical license is recognized by state law to be a property interest, a "blemish" on such a license could be compared to a seizure of a portion of one's land, but this would depend on what exactly the "blemish" consisted of and whether it would seriously harm the licensee's medical practice. And a physician has no due process right to be exempt from formal procedures of a hospital that can result in his being disciplined. *Abcarian v. McDonald*, *supra*, 617 F.3d at 942. But we needn't pursue that issue, because Indiana's medical licensing board has not censured Babchuk; nor is there evidence that his career has been hindered by the hospital's reporting the suspension of his medical privileges to Indiana's medical licensing board and the National Practitioner Data Bank.

Babchuk goes way overboard in arguing that the hospital's action in suspending his privileges has rendered his license "virtually worthless" and as a result has prevented him from ever again obtaining staff privileges in a hospital. He argues that because before granting such privileges a hospital must check the National Practitioner Data Bank for adverse peer-review information, 42 U.S.C. § 11135(a)(1),

and "defendants' summary suspension of Dr. Babchuk has been reported to the NPDB and the Indiana medical licensing board, Dr. Babchuk is 'blackballed' with respect to future employment and his license to practice medicine has been rendered virtually worthless." Not so; for though it's been more than three years since his termination by Tipton Hospital, he has presented no evidence that he's been "'blackballed'" and his license to practice medicine "rendered virtually worthless." He is on the physician list of Indiana's Logansport Memorial Hospital, as his lawyer acknowledged at oral argument (see also www.logansportmemorial. org/pages/Physician-Detail/?Name=Babchuk&physicianID= 3205 (visited January 9, 2016)), and the hospital website that we just cited says that he and his professional corporation occupy a suite at the hospital and are accepting new patients.

He argues in the alternative that he has a property interest not only in his license but also in his medical privileges at Tipton Hospital, because the hospital's bylaws establish procedures for terminating medical privileges of doctors working at the hospital. But the existence of such procedures creates no entitlement to continued privileges. "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); see also *Cain v. Larson, supra*, 879 F.2d at 1426. So while it's true that an employee who has tenure—a statutory or contractual entitlement to retain his job for a specific period (which can be life) conditioned on good behavior—has therefore a property interest in his job, *Board of Regents v. Roth, supra*, 408 U.S. at 576; *Cleveland Board of Education v.*

*Loudermill*, 470 U.S. 532, 538–39 (1985), Dr. Babchuk did not have tenure at Tipton Hospital.

It is true that an Indiana statute provides procedural protections, similar to those in Tipton Hospital's bylaws, for disciplinary charges that if sustained by the hospital's governing board would have to be reported to the state licensing board. Ind. Code § 34-30-15-5. But that is a procedural provision. It no more creates a property interest than the requirement of proof beyond a reasonable doubt in a criminal case gives a criminal defendant a liberty interest. The reasonable-doubt standard is procedural, conferring a degree of protection of a liberty that a criminal conviction would impair. In contrast, hospital privileges terminable at will are not a constitutionally protected entitlement. See *Lim v. Central DuPage Hospital*, 871 F.2d 644, 647 (7th Cir. 1989); *Illinois Psychological Association v. Falk*, 818 F.2d 1337, 1344 (7th Cir. 1987). To hold otherwise would turn every at-will contract into a tenure contract.

Tipton Hospital's bylaws declare that the grant of medical privileges is "not a contract" and that appointment to the medical staff is "a privilege which may be extended by the Board [of Directors] only to professionally competent, fully licensed physicians … who *continuously* meet the qualifications, standards, and requirements set forth in these bylaws and as established by the Board" (emphasis added). The bylaws don't define specific criteria for the removal or retention of privileges but instead provide a list of general qualifications and skills that a physician must demonstrate to maintain privileges, including "demonstrated competence," "good reputation[]," "ability to work with others" and "ability and willingness to make efficient use of Hospital facili-

ties." A physician must "continuously maintain and demonstrate the appropriate level of competence, skill, training, and aptitude which would justify the continuance of those clinical privileges." And finally and critically, the bylaws provide that nothing in them "shall in any way limit the ultimate authority of the Board to take action with respect to … the status [of] clinical privileges."

As if this were not enough, the defendants have a compelling alternative ground for affirmance: that they are not state actors—that the actions of the hospital which Dr. Babchuk claims harmed him and his professional corporation cannot be attributed to the State of Indiana and thus were not committed under color of state law and so cannot be a basis for a constitutional suit. About this defense the district judge said that "a reasonable jury could conclude either that Defendants were acting under color of state law or that they were not." That was incorrect; clearly they were not acting under color of law.

The defendant that comes closest to being an arm of the state is Indiana University Health, Inc. (IU Health, the parties call it), the owner of Tipton Hospital. Actually IU Health is at least formally private, as the "Inc." at the end of its name implies, but some members of its governing board are elected by the trustees of Indiana University, a state university. And the operating expenses of the university's medical school are paid from IU Health's revenues, which in turn derive in part from Tipton Hospital. So there are connections between the hospital and the state university. But those connections do not make the hospital's termination of Dr. Babchuk's privileges state action. Tipton Hospital is private and everyone involved in the termination of his privileges was a

physician on the hospital's medical staff except the hospital's CEO, who is an employee of IU Health but whose vote on the summary suspension was unnecessary because three qualified members of the medical staff had already agreed on suspension. Although Babchuk had a right to appeal to the hospital's board of directors, some of whom had been appointed by IU Health, he did not appeal.

So this is not a case in which "it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (emphasis in original). The fact that some of Tipton Hospital's revenues are siphoned off to the state university no more makes the hospital a state actor than the fact that tax laws siphon income from private companies and individuals to state and federal treasuries. The university may well exert pressure direct and indirect on Tipton Hospital, just as federal and state governments in manifold ways exert pressure on private institutions. Government is omnipresent; that doesn't make all employees of private entities state actors.

The judgment in favor of the defendants is

AFFIRMED.