2001 OK CIV APP 133

**Janet THORNTON, Plaintiff/Appellant,**

v.

**HOLDENVILLE GENERAL HOSPITAL, Melissa McClellan, Christy Marsh, and Joseph Mitchell, Defendants/Appellees.**

**No. 94,878.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Decided May 8, 2001.

Certiorari Denied Oct. 2, 2001.

Jeff Martin, Tulsa, OK, for Plaintiff/Appellant.

Terry Todd, Leslie C. Weeks, Elizabeth K. Hall, RODOLF & TODD, Tulsa, OK, for Defendants/Appellees.

COLBERT, Judge:

¶1 Plaintiff, Janet Thornton, appeals the district court's summary judgment in favor of Defendants, Holdenville General Hospital (Hospital), Melissa McClellan, Christy Marsh, and Joseph Mitchell.[1] The issue on appeal in this action for defamation and related theories of recovery is whether the district court erred in finding that there was no issue of material fact such that judgment was proper as a matter of law. Upon review of the record and the applicable law, we conclude that the district court did not err and affirm its decision.

¶2 Plaintiff, a doctor of osteopathy, was an independent contractor with Gould Group, Inc., a company that specializes in placing physicians with health care facilities. Gould had a contract with Hospital to provide physicians to staff its emergency room. Gould was responsible for assigning the required number of physicians and setting their schedules. Gould regularly assigned Plaintiff to

---

1. Another defendant, Ann Klepper, was dismissed from the appeal after the case was transferred to this court.

work at Hospital, as well as other area hospitals.

¶ 3 In early 1998, representatives of Hospital and Gould discussed Hospital's concerns about Plaintiff's treatment of patients. These discussions involved Mitchell, Hospital's Chief Executive Officer; McClellan, Hospital's Chief Nursing Officer; Marsh, Hospital's Emergency Room Director; and Ann Klepper, an independent contracting physician with Gould and Medical Director of Hospital's emergency room (but not a Hospital employee).

¶ 4 The discussions centered on the participants' belief that Plaintiff had rendered substandard care to emergency patients and that patients had died as a result. Those involved in these discussions were also concerned about a letter from the Department of Human Services concerning Plaintiff's alleged refusal to accept an emergency referral from a nearby Indian clinic. (The allegations in the letter, if proven true, could have resulted in substantial fines for both Hospital and Plaintiff. Although Plaintiff denied the allegations in the letter, an emergency room nurse remembered the incident and corroborated the Indian clinic's allegations.) Finally, Gould also apparently had concerns about Plaintiff's professionalism and truthfulness.

¶ 5 In March 1998, Hospital informed Gould it no longer wanted Plaintiff scheduled to work at its facility. Plaintiff was not informed of this decision at that time. Although Hospital initially agreed to allow Gould to schedule Plaintiff through March, Hospital, through McClellan, contacted Gould on March 12th and directed Gould to stop scheduling Plaintiff as of that day. Plaintiff was not informed of the decision until she reported for her previously assigned shift on March 16, 1998.

¶ 6 Plaintiff brought this lawsuit seeking damages for the statements made by Defendants in the course of their discussions about her job performance. She based her claim on the theories of (1) interference with a

contractual relationship; (2) defamation; (3) intentional or negligent infliction of emotional distress; (4) respondeat superior; (5) breach of contract; and (6) deprivation of property interest without due process. All Defendants moved for summary judgment on several grounds. The district court concluded that Defendants were entitled to judgment as a matter of law.

¶ 7 Plaintiff filed a "Motion to Open, Modify and Vacate Order Granting Defendants Summary Judgment," which we will treat as a motion for new trial.[2] While that motion was pending, Plaintiff filed a petition in error to appeal from the summary judgment. The district court subsequently denied Plaintiff's motion and she amended her petition in error to reflect that denial.

## STANDARD OF REVIEW

¶ 8 "Summary judgment is proper only when the pleadings, affidavits, depositions, admissions or other evidentiary materials establish that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Davis v. Leitner*, 1989 OK 146, ¶ 9, 782 P.2d 924, 926. In reviewing the grant or denial of summary judgment, we must view all inferences and conclusions to be drawn from the evidentiary materials in a light most favorable to the party opposing the motion. *Id.* Although a trial court considers factual matters when deciding whether summary judgment is appropriate, its ultimate decision is purely legal: whether one party is entitled to judgment as a matter of law because there are no material disputed facts. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. Therefore, our standard of review is de novo. *Id.*

## DISCUSSION

¶ 9 Plaintiff asserts that the district court erred in finding that she had no claim for defamation because the statements about

2. Because Plaintiff's "Motion to Open, Modify and Vacate Order Granting Defendants Summary Judgment" was filed within ten days of the filing of the order granting summary judgment, we treat it as the functional equivalent of a motion for new trial which secures a full review of the summary judgment. *Malicoate v. Standard Life & Accident Ins. Co.*, 2000 OK CIV APP 37, ¶ 9 n. 3, 999 P.2d 1103, 1107 n. 3.

which she complained were not published, and, even if they were published, the statements were privileged. She also asserts that the district court erred in finding that she had no contract with Hospital arising from the by-laws addressing hospital privileges and had no property interest sufficient to give rise to a due process claim. We have thoroughly reviewed the summary judgment record, the arguments of the parties, and the evidentiary materials and conclude that the district court did not err in issuing a summary judgment in favor of all Defendants.

## A. Defamation

¶ 10 Plaintiff alleged the following defamatory statements were made by Mitchell, McClellan, and Marsh: (1) Plaintiff was dishonest; (2) Plaintiff provided substandard medical care to four identified patients and patients died in the emergency room because of her failure to provide adequate treatment; (3) Hospital was not satisfied with Plaintiff's performance as a doctor; and (4) Plaintiff may have violated federal law based on her response when a nearby Indian clinic attempted to refer a client to Hospital (as set forth in a letter from the Department of Human Services to Hospital). Plaintiff alleges slander, the verbal form of defamation. The Oklahoma statutes define slander as follows:

Slander is a false and unprivileged publication, other than libel [which is written], which:

1. Charges any person with crime, or with having been indicted, convicted or punished for crime.

\* \* \*

3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit.

**3.** Plaintiff asserts that this rule of law should be abandoned and rejected in Oklahoma and replaced by the view set forth in Restatement (Second) of Torts § 577(1) ("Publication of defamato-

12 O.S.1991 § 1442. In granting summary judgment, the trial court correctly concluded that the statements were not published and were privileged.

## 1. Publication

■ ¶ 11 Communication inside a corporation, between its officers, employees, and agents, is never a publication for the purposes of actions for defamation. *Magnolia Petroleum Co. v. Davidson*, 1944 OK 182, ¶ 35, 148 P.2d 468, 471 (explaining that "the statements of [one employee] to [another] could not be considered as a matter of law a publication"); see also *Starr v. Pearle Vision, Inc.*, 54 F.3d 1548 (10th Cir.1995).[3] Although it is called an "intra-corporate privilege," this really is a rule that intra-corporate communications those between a corporation's officers, employees, and agents never reach the point of requiring a privilege, because they are never actually published if they never go outside the corporation.

¶ 12 Here, Plaintiff alleged and introduced evidence that Hospital employees made negative statements about her to Gould employees. Defendants argue that, because Gould served as Hospital's agent for the purposes of staffing the emergency room, any communication between Hospital and Gould employees is covered by the absolute privilege. They assert, "Gould ... hired the doctors, set their work schedule, and made sure that the emergency room at [Hospital] was covered by an emergency room physician at all times."

■ ¶ 13 We agree. An agency relationship arises when one person consents for another person to act on his behalf. *Curtis v. CIA Mach., Inc.*, 1977 OK CIV APP 31, ¶ 9, 571 P.2d 862, 865. For the purposes of the intra-corporate privilege:

Agents and employees of this character are not third persons in their relations to the corporation, within the meaning of the laws pertaining to the publication of libels. For the time being, they are a part and parcel of the corporation itself, so much so,

ry matter is its communication intentionally or by a negligent act to one other than the person defamed."). We decline her invitation.

indeed, that their acts within the limits of their employment are the acts of the corporation. For a corporation, therefore, acting through one of its agents or representatives, to send a libelous communication to another of its agents or representatives, cannot be a publication of the libel on the part of the corporation. It is but communicating with itself.

*Magnolia,* 1944 OK 182, ¶ 31, 148 P.2d at 471 (quoting *Prins v. Holland–North Am. Mortgage Co.,* 107 Wash. 206, 181 P. 680 (Wash. 1919)).

■ ¶ 14 The existence of agency is generally a question of fact and the burden of proving its existence rests on the party asserting it. *N.H. v. Presbyterian Church (U.S.A.),* 1999 OK 88, ¶ 12, 998 P.2d 592, 598. In this case, however, there is no dispute that Gould was contractually responsible for the physician staffing of Hospital's emergency room. In this context, Gould was Hospital's agent. As a result, any statements made between Hospital's employees and Gould's representatives, at least within that agency relationship, were protected by the intra-corporate privilege recognized in *Magnolia.*

¶ 15 The statements about which Plaintiff complains addressed Hospital's concerns regarding her competency. As such, they were made within the confines of the agency relationship between Hospital and Gould and were not published outside the confines of that relationship. Thus, the statements were not published and are not, therefore, defamatory.

## 2. Privilege

■ ¶ 16 In addition, the parties agree that a conditional privilege attached to the statements allegedly made by Defendants. A conditional privilege attaches to statements, which would ordinarily be defamatory, made in good faith on a subject in which the speaker has an interest or in reference to which he has or honestly believes he has a duty to perform. *Hammett v. Hunter,* 1941 OK 253, ¶ 8, 117 P.2d 511, 512–13 (quoting *Bland v. Lawyer–Cuff Co.,* 1918 OK 95, 178 P. 885).

¶ 17 A question of medical competence is particularly within the qualified privilege. "At common law privileges were recognized as a means to balance the interests of a person protecting his reputation with certain interests of the defendant, a third person or the public. These interests were perceived to be of enough social importance to warrant some limitations to a plaintiff's right to recover for injury to his reputation." *Meistrell v. McPhail,* 1989 OK CIV APP 67, ¶ 8, 788 P.2d 1387, 1389 (holding that where a doctor sued a hospital credentialing committee member who stated doctor's performance was unsatisfactory, the statement was privileged). The *Meistrell* court also stated:

Defendant had a responsibility to protect the public from services by physicians who for any reason might be less than competent doctors. Hospitals must endeavor to secure the most competent and experienced staff for their patients. The hospital in admitting a physician or surgeon to its facilities extends a moral imprimatur to him in the eyes of the public.

*Id.* at ¶ 9, 788 P.2d at 1389.

■ ¶ 18 If a publication is qualifiedly privileged, then there is no presumption of malice; the plaintiff must prove actual or express malice. *Reininger v. Prickett,* 1943 OK 193, ¶ 17, 137 P.2d 595, 598; see also *Park v. Security Bank & Trust Co.,* 1973 OK 72, ¶ 32, 512 P.2d 113, 119 (stating that "express malice," for the purposes of an action for malicious prosecution, "must be actuated by ill-will or hatred, or wilfully done in a wanton and oppressive manner and in conscious disregard of the other's rights").

■ ¶ 19 The existence of malice is normally a question of fact. See *Brown v. Skaggs Albertson's Properties, Inc.,* 563 F.2d 983, 987–88 (10th Cir.1977). In an action for intentional infliction of emotional distress, this court has quoted *Brown* to define malice as:

"[A]n unreasonable and wrongful act done intentionally, without just cause. Malice may be inferred in the situation where the defendant has no reasonable basis for believing that the statement is true. This would be the case where there had been a failure to make an adequate investigation."

*Joffe v. Vaughn,* 1993 OK CIV APP 169, ¶ 11, 873 P.2d 299, 303 (quoting *Brown,* 563 F.2d at 986) (alteration in original).

¶ 20 The statements about which Plaintiff complains questioned her competence as a physician. They were made by individuals who were in positions where they needed to be confident of Plaintiff's abilities. On the surface, these statements fit squarely within the confines of the conditional privilege.

¶ 21 Plaintiff, however, alleges that the statements made by McClellan were prompted by malice. Unfortunately, the only evidence she puts forth to show malice is that she and McClellan had exchanged words and had differences of opinions in two or three unrelated situations. This is simply not evidence that McClellan had "express malice" in making the statements about which Plaintiff complains.

¶ 22 Plaintiff has presented no evidence that any of Defendants' statements were prompted by "express malice."[4] "[T]he mere contention that facts exist or might exist is not sufficient to withstand summary judgment. The party responding to a motion for summary judgment has an obligation to present something which shows that when the date of trial arrives, he will have some proof to support his allegations." *Davis,* 1989 OK 146, ¶ 12, 782 P.2d at 926 (footnotes omitted). Absent any evidence to the contrary, the district court did not err in determining, as a matter of law, that Defendants' statements were privileged.

## B. Breach of Contract and/or Due Process

¶ 23 Plaintiff contends that Hospital's by-laws constituted a contract that contained Hospital's promise to refrain from terminating Plaintiff's privileges without notice and a hearing. She argues that Hospital has breached that contract. Plaintiff further argues that Hospital's failure to afford her a hearing on the termination of her privileges resulted in a deprivation of due process. Having reviewed the parties' arguments and evidentiary materials in detail, we conclude that Plaintiff's claims are not supported by any evidence.

¶ 24 We start with the basic observation that Plaintiff had no reasonable expectation of continued employment with, or assignment to, Hospital, which would give her an opportunity to exercise her privileges. "To invoke the protections of procedural due process, a plaintiff must establish the existence of a recognized property or liberty interest." *Setliff v. Memorial Hosp.,* 850 F.2d 1384, 1394 (10th Cir.1988). Moreover, procedural rules set forth in by-laws do not necessarily create a constitutionally-protected property right in future employment, entitling the holder to due process. *Asbill v. Housing Auth. of the Choctaw Nation,* 726 F.2d 1499, 1502 (10th Cir.1984).[5]

¶ 25 In this case, there were no restrictions on Hospital's right to terminate Plaintiff's assignment to its emergency room. Plaintiff agrees that Hospital could terminate her assignment for good reason, bad reason, or no reason at all. She testified:

> Q: If we had just an honest, good old-fashioned disagreement about your medical care, and the hospital said, "Well, under our contract with Gould, we just don't want you to schedule Dr. Thornton here anymore, ... would you have sued for that, if they said, 'look, we don't like your care. We don't want you to come back?' "

> A: All Holdenville had to say was, "I don't like the color of her eyes," and Gould Group has the right to terminate my services because it was at the request of the hospital.

She simply had no property interest to be protected. Yet, Plaintiff contends that Hospital somehow breached a contract with her and/or violated her due process rights by

---

4. Plaintiff devotes substantial argument on the degree of malice she must prove in this situation. Because we hold that Plaintiff presented *no* evidence of malice, we need not discuss the *degree* of malice required.

5. Plaintiff argues Hospital's by-laws created just such a property interest, citing *Lowe v. Scott,* 959 F.2d 323, 335 (1st Cir.1992) (stating, "when a public hospital grants a physician hospital privileges, and undertakes explicitly or implicitly not to revoke these privileges without appropriate process, a protected property interest is created"). *Lowe* is of very limited application here, considering the particular facts at play.

telling Gould it no longer wanted her scheduled to work in its emergency room.

¶ 26 Hospital's by-laws provide for notice and a hearing if Hospital takes some action adverse to a physician's privileges. Although Plaintiff contends otherwise, the evidentiary materials submitted by Defendants establish that she had consulting privileges on a temporary and provisional basis. Even if "temporary privileges" would have ordinarily entitled Plaintiff to notice and a hearing, she failed to establish that right here on a number of grounds.

¶ 27 First, Hospital maintains that Plaintiff's privileges are not terminated, even though she is no longer assigned to Hospital to work as a physician. The only evidence Plaintiff has presented to contradict Hospital's position is a document in which the Missouri medical licensing board requested information from Hospital. In response to a question regarding any termination of Plaintiff's privileges, Hospital replied, "no comment." Hospital stated that it answered the question in that manner because it was already involved in this litigation. This is simply not evidence that Plaintiff's privileges were terminated.

¶ 28 Plaintiff continues to argue that, at the very least, her privileges were "constructively terminated," saying, "Honestly, could [I] have exercised privileges after this?" This argument, unsupported by authority, falls far short of a legal argument sufficient to support this claim.

¶ 29 Second, during the time Plaintiff was assigned to Hospital, Hospital adopted its "Fair Hearing Plan." In that plan, Hospital stated that physicians rendering services to Hospital under a contract were not entitled to a hearing under the by-laws. Plaintiff was unquestionably rendering service to Hospital under a contract and, thus, she was not entitled to a hearing even if her temporary and provisional privileges were revoked.

¶ 30 Finally, Plaintiff never requested a hearing. She argues that this was because she did not know she was entitled to a hearing, because she had never received a copy of the by-laws. Nonetheless, when Plaintiff originally applied for privileges, she acknowledged that she had received and read the by-laws. Having made that acknowledgment, she is charged with knowledge of the contents of those by-laws, including the provisions regarding notice and hearing. When she never requested a hearing, she waived any right to any hearing to which she might have been entitled.

¶ 31 Plaintiff failed to establish the existence of a contract between herself and Hospital. She also failed to establish any property interest giving rise to a due process claim. The district court did not err in granting summary judgment in favor of Defendants on those claims.

## CONCLUSION

¶ 32 Plaintiff was an independent contractor, assigned to Hospital's emergency room by Gould. Hospital told Gould, its agent, to stop scheduling Plaintiff to its facility. In so doing, representatives of Hospital and Gould discussed their reasons and their general concerns about Plaintiff's actions as a physician. The discussions never left the confines of the Hospital, its employees, and its agents. The discussions were also confined to the participants' professional concerns about Plaintiff. Such discussions were not defamatory, as they were never published and were privileged.

¶ 33 Plaintiff had no guarantee or reasonable expectation that she would continue to be assigned to work at Hospital. She knew that Hospital could decline her continued assignment for any reason at all, good or bad. Hospital and other Defendants breached no contract with Plaintiff, nor did they deny her due process in any way.

¶ 34 The district court thoroughly reviewed the summary judgment materials and correctly concluded that Defendants were entitled to judgment as a matter of law.

¶ 35 AFFIRMED.

¶ 36 REIF, V.C.J., and GOODMAN, P.J., concur.