2006 OK CIV APP 82

**Doug ISHMAEL, Plaintiff/Appellant,**

**v.**

**Stephen L. ANDREW, and Stephen L. Andrew & Associates, a professional corporation, Defendants/Appellees.**

**No. 102,129.**

Court of Civil Appeals of Oklahoma, Division No. 3.

June 9, 2006.

Richard Carpenter, Carpenter, Mason & McGowan, Tulsa, OK, for Plaintiff/Appellant.

Joseph R. Farris, Paula J. Quillin, Feldman, Franden, Woodard, Farris, & Boudreaux, Tulsa, OK, for Defendants/Appellees.

Opinion by KENNETH L. BUETTNER, Chief Judge.

¶ 1 Plaintiff/Appellant Doug Ishmael appeals from summary judgment granted in favor of Defendants/Appellees Stephen L. Andrew and Stephen L. Andrew & Associates. Ishmael's employer hired Andrew, an attorney, to investigate an incident in which an employee's drink was contaminated. Andrew believed Ishmael was the perpetrator and accused Ishmael in an interview, but Ishmael denied any involvement in the incident. Ishmael's employer then terminated Ishmael's employment due to a reduction in force. Ishmael sued Andrew for negligent investigation, slander, and intentional infliction of emotional distress. The undisputed facts show Andrew was entitled to judgment as a matter of law and we affirm.

¶ 2 In his Amended Petition, filed February 11, 2003, Ishmael alleged that in January 2002, Andrew investigated the poisonous contamination of an employee's drink for Andrew's client, Nordam Group, Inc. Ishmael alleged that Andrew was negligent in conducting the investigation and that Andrew slandered Ishmael by naming Ishmael as the perpetrator of the contamination. Ishmael asserted that Andrew's negligent investigation caused Ishmael to suffer embarrassment, humiliation, physical pain, and the loss of his job.

¶ 3 Ishmael also asserted a claim for intentional infliction of emotional distress. He claimed Andrew intentionally harmed him by accusing him of contaminating the drink, then labeling Ishmael a liar when he denied

the accusation, as well as falsely informing Ishmael that Andrew had witnesses who saw him contaminate the drink. Ishmael alleged these intentional acts caused him to suffer emotional and physical harm. Ishmael also made a claim for punitive damages.

¶4 Andrew answered and denied all of Ishmael's claims. Andrew also filed a motion for summary judgment.[1] Andrew asserted he could not be liable for negligent investigation because he owed no duty to Ishmael in the investigation. Andrew asserted that as an attorney hired by Nordam, he owed a duty only to Nordam.

¶5 Andrew also asserted he could not be liable for slander or defamation because Andrew's statements to Ishmael that Ishmael was a liar and had contaminated the drink were Andrew's opinions and conclusions, and were not false statements. Andrew also asserted that Ishmael admitted in his deposition that he had no reason to believe Andrew or anyone else at Nordam accused him of the prank to anyone outside of Nordam. Andrew noted that communication inside a corporation between its officers, employees, and agents is never a publication for purposes of

a defamation action, citing *Thornton v. Holdenville General Hosp.*, 2001 OK CIV APP 133, 36 P.3d 456. Andrew contended that as Nordam's agent, his communications within Nordam were considered corporate communications which are not publications for defamation purposes. *Id.* Finally, Andrew asserted that his communications regarding the investigation could not be slander because as communications made in the course of an investigation conducted in anticipation of litigation, the communications were privileged. *Id.*

¶6 Andrew also asserted that Ishmael's claim for infliction of emotional distress must fail because Ishmael was unable to show outrageous conduct, a required element of intentional infliction of emotional distress, or physical injury, a required element of a claim for negligent infliction of emotional distress. Andrew also asserted that Ishmael had suffered no damages because he obtained a higher paying job a month after Nordam terminated his employment.

¶7 Ishmael objected to summary judgment.[2] Ishmael noted he had sought to

1. Andrew listed 19 undisputed facts: 1) Ishmael was an employee of Nordam Group, Inc. from February 22, 1999 to January 21, 2002; 2) in 2001, Ishmael was 23 years old; 3) while employed by Nordam, Ishmael frequently engaged in horseplay and pranks with other employees; 4) Nordam has a policy against horseplay; 5) on December 6, 2001, a Nordam employee found that her soft drink had been contaminated; 6) the soft drink was contaminated with acetone; 7) Andrew investigated the incident on behalf of his client, Nordam; 8) as part of his investigation, Andrew took statements from various employees, some of whom thought Ishmael was responsible for the contamination; 9) Nordam terminated Ishmael's employment in January 2002 because of a reduction in force; 10) Ishmael agreed that Nordam told him his position was eliminated, but Ishmael did not believe that; 11) Andrew believed Ishmael was responsible for the contamination of the drink and expressed that opinion to Ishmael; 12) Ishmael contended he was terminated due to Andrew's negligent investigation, slander, and defamation; 13) at the time he was terminated, Ishmael was paid $11.80 per hour; 14) in February 2002, Ishmael began working for another company at $13.00 per hour and by the time of the summary judgment motion he was making $14.50 per hour; 15) Ishmael was hired by the new company as soon as he applied; 16) Ishmael was not working for one month after Nordam terminated his employment; 17) Ishmael testified he had no reason to believe Andrew or

anyone at Nordam accused him of the contamination to anyone outside the company; 18) each statement Andrew made to Ishmael or any other person employed by Nordam was made as an attorney and agent of Andrew's client, Nordam; and 19) Andrew believed he owed a duty to Nordam with respect to his investigation to make the statements he made to Ishmael.

2. Ishmael first responded with a motion to strike portions of Andrew's motion for summary judgment. Ishmael complained that the facts that he engaged in horseplay and that Nordam had a policy against horseplay were not relevant because, according to Ishmael he was not fired for engaging in horseplay but for committing a felony by contaminating another person's drink. Ishmael also sought to strike Andrew's Exhibit 4, which was a Nordam form for changing an employee's record. It indicated Ishmael was subject to a "RIF—Reduction in Finish Out Not Eligible for Re-hire." Ishmael argued the form had not been identified or authenticated and was inadmissible hearsay. Ishmael also sought to strike portions of his deposition testimony because he had later clarified that testimony. Ishmael also sought to strike paragraph 7 of Andrew's affidavit, as well as Andrew's 19th undisputed fact, both stating that Andrew believed he owed a duty to Nordam to investigate the contamination incident and make the statements to Ishmael, because, according to

strike ¶¶ 3,4,8, and 19 of Andrew's statement of undisputed facts. Ishmael further asserted ¶¶ 2, 13, 14, and 15 were not relevant or material. Ishmael asserted he took issue with ¶ 1 because it stated he worked until January 21, 2002.[3] He took issue with ¶ 11, contending Andrew had no legitimate reason for having the opinion that Ishmael was responsible for the contaminated drink.[4] Lastly, Ishmael asserted he also took issue with ¶¶ 9, 11, 17, and 18.

¶ 8 The trial court entered its Journal Entry of Judgment April 20, 2005, in which it denied Ishmael's motion to strike portions of Andrew's motion for summary judgment and granted summary judgment in favor of Andrew. Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment.

*Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.[5]

## NEGLIGENT INVESTIGATION

¶ 9 The essential elements of a negligence claim are: (1) a duty owed by defendant to protect plaintiff from injury, (2) a failure to properly exercise or perform that duty, and (3) injuries to plaintiff proximately caused by defendant's failure to exercise his duty of care. *McKellips v. St. Francis Hospital Inc.*, 1987 OK 69, 741 P.2d 467, 470. Duty is the threshold question in any negligence action. *Haas v. Firestone Tire & Rubber Co.*, 1976 OK 178, 563 P.2d 620, 625. Andrew asserted he owed no duty to Ishmael because Andrew represented Nordam and not Ishmael. Ishmael responded that Andrew could be liable to a him as a third party affected by the allegedly negligent investigation of the contamination because the harm to Ishmael was foreseeable. For this argument, Ishmael relied primarily on a case involving an investigator hired by an insurance company to investigate a claim made by an insured. See *Brown v. State Farm Fire & Cas. Co.*, 2002 OK CIV APP 107, 58 P.3d 217.[6] Whether or not a duty exists depends on the relationship between the parties. Duty of care is a question of law. The court decides whether a defendant stands in such a

Ishmael, that information was not material or relevant. Ishmael next asked the court to strike paragraph 5 of Andrew's affidavit which states that Andrew took statements from Ishmael's fellow employees and some of them stated Ishmael was responsible. Ishmael contended these statements were inadmissible hearsay. Lastly, Ishmael challenged Andrew's attachment of Ishmael's Petition as an exhibit to his summary judgment motion because Ishmael had since filed an Amended Petition.

3. The termination sheet, attached as Exhibit 4 to Andrew's Motion for Summary Judgment, is dated January 21, 2002.

4. The evidence in the record shows that Andrew interviewed several employees regarding the incident. Only two offered an idea of who contaminated the drink, and both named Ishmael. In his testimony, Ishmael agreed he had committed pranks at work, including gluing people to the floor, gluing tools, and squirting lotion on co-workers.

5. In his petition in error, Ishmael argued that granting summary judgment to Andrew required the trial court to find: 1) it was true that Ishmael

contaminated the drink; 2) Andrew was not negligent in conducting the investigation of the contamination; 3) "that somehow, what otherwise would be slanderous per se, i.e., the accusation of a felonious criminal act, was privileged on the part of Andrew"; 4) Andrew "was not guilty of" intentionally inflicting emotional distress on Ishmael; 5) Ishmael suffered no damages as a result of Andrew's acts; and 6) Ishmael had no cause of action for slander, intentional infliction of emotional distress, or negligent investigation because he was an employee at will.

6. In *Brown*, the insurer hired someone to investigate a claimed loss. The adjuster's negligent investigation resulted in the claim being wrongly denied. The Court of Civil Appeals noted it addressed the unique question whether an independent investigator or adjuster retained by an insurance company owes a duty to an insured. The court held that independent insurance investigators owe a duty to the insured to conduct a fair and reasonable investigation of an insurance claim. 2002 OK CIV APP 107 at ¶ 19, 58 P.3d 217.

relationship to a plaintiff that the defendant owes an obligation of reasonable conduct to persons who are foreseeably endangered by his conduct with respect to risks which make the conduct unreasonably dangerous. *Wofford v. Eastern State Hospital,* 1990 OK 77, 795 P.2d 516.

¶ 10 Insurance cases, such as *Brown, supra,* are not applicable to the determination of a duty in this case because the duty an insurer, or its agents, owes to its insureds who have paid for the benefit of the insurance contract, is unlike any duty an employer or its agent owes to an at-will employee in investigating workplace misconduct.[7] Ishmael has failed to present authority supporting a finding that Andrew owed him a duty in this case.

¶ 11 We also note that the only evidence in the record shows that Ishmael's employment was terminated due to a reduction in force. Although Ishmael did not believe the evidence, he offered no admissible, contrary evidence. Accordingly, Ishmael has failed to present evidence showing a conflict of fact on the issue of whether Andrew's investigation caused Ishmael to lose his job.[8] Finally, Ishmael has offered no indication of how Andrew should have conducted the investigation differently. Andrew interviewed each of the employees who worked in the area of the contamination. All but two declined to name a suspect. Two employees suggested Ishmael could have contaminated the drink because he was known for committing pranks in the workplace. Ishmael's complaint is that the investigation was negligent because Ishmael continues to deny involvement in the contamination. Ishmael has failed to show an issue of fact on the threshold issue of duty and we affirm summary judgment in favor of Andrew on the negligent investigation claim.

### SLANDER

¶ 12 Ishmael asserted a claim for slander based on Andrew accusing him of contaminating the drink. Andrew contended he could not be liable for slander because the accusation was not published and was privileged. Oklahoma statutes define slander:

> Slander is a false and unprivileged publication, other than libel, which:
>
> 1. Charges any person with crime, or with having been indicted, convicted or punished for crime.
>
> 2. Imputes in him the present existence of an infectious, contagious or loathsome disease.
>
> 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit.
>
> 4. Imputes to him impotence or want of chastity; or,
>
> 5. Which, by natural consequences, causes actual damage.

12 O.S.2001 § 1442. Publication is essential to a claim for slander.

¶ 13 Ishmael asserted that his affidavit and his corrections to his deposition testimony present questions of fact whether Andrew published the accusations. In his deposition, Ishmael testified that when Andrew interviewed him during the investigation, others in the room were Bobby Ainsworth, the shop manager, and a court reporter. Ishmael testified also that during the interview, Andrew told him he thought he was a liar and he thought Ishmael contaminated the drink. During the deposition, counsel for Andrew asked if Ishmael had any reason to believe that Andrew had published the accusation to anyone outside of Nordam. Ishmael answered simply "no."[9]

---

7. Unlike insurance contracts, there is no implied covenant of good faith and fair dealing in an at-will employment contract. *Merrick v. Northern Natural Gas Co.,* 911 F.2d 426, 432 (10th Cir. 1990).

8. It appears that the substance of Ishmael's claimed damages depends on his termination being the result of the investigation, rather than a reduction in force. The failure to produce evidence of the former is fatal at least as to the negligence and intentional inflection of emotional distress claims.

9. In his deposition, Ishmael testified he had told two of his new co-workers that he had been accused of contaminating the drink.

¶ 14 Ishmael later filed corrections to his deposition testimony, including the following replacement for that line:

> No, well wait a minute there was a lady there and I didn't know who she worked for. I didn't know her but she was typing and recording what was being said. Mr. Andrew also made some of the same accusations later in his office. This was in front of a private investigator. I imagine he made the same comments to his office employees.

This corrected testimony does not establish that anyone outside of Nordam or its agents heard the accusations. *Magnolia Petroleum Co. v. Davidson,* 1944 OK 182, 148 P.2d 468, 471, 194 Okla. 115, established the law in Oklahoma that agents and employees of a corporation are not third parties to the corporation in their relations with the corporation, and therefore communications between those agents and employees are not considered publications, because it is the corporation communicating with itself. At the time of the investigation, Andrew was an attorney working for Nordam. The rule that intracorporate communications are not published for slander purposes applies to employees and agents, which would include Andrew, a private investigator, a stenographic reporter, and Andrew's office employees, all agents hired by Nordam to investigate the contamination of its employee's drink. *Id.*

¶ 15 In his affidavit, prepared after Andrew's motion for summary judgment, Ishmael asserted in clause 3 that on January 9, 2002, "a lady I have now been able to identify as Lisa A. Steinmeyer, a person who was not an employee of Nordam or Andrew" was present at the interview when Andrew accused Ishmael. The affidavit does not state what Steinmeyer's role was and it does not indicate Steinmeyer was there in addition to the others he had previously stated were there.[10] Clause 4 of the affidavit states, apparently referring to another date, "(i)n his office, Andrew again said I committed the crime, this time in front of a person I have not been able to identify but who was identified to me as a person not employee (*sic*) of Nordam or Andrew."

¶ 16 The trial court may disregard an affidavit which purports to create an issue of fact by directly contradicting prior testimony. *Savage v. Burton,* 2005 OK CIV APP 106, 125 P.3d 1249. In determining whether an affidavit may be disregarded because it attempts to create a sham issue of fact, we consider whether the party was cross-examined during his earlier testimony, whether he had access to the evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain. *Id.,* citing *Franks v. Nimmo,* 796 F.2d 1230 (10th Cir.1986).

¶ 17 In this case, Ishmael's deposition was taken August 3, 2004. Counsel for Andrew questioned him. The information he posited in his affidavit and correction to deposition testimony was available to him at the time of the deposition. Ishmael obviously was at the interview with Andrew about which he testified. A portion of the transcript of that interview is in the record. Ishmael's later declaration in his affidavit that there were two people present at that interview who were not agents or employees of Nordam and/or Andrew is not sufficient to create a fact issue on the essential element of publication for a slander claim.

¶ 18 The undisputed facts here show that Andrew was an agent or employee of Nordam who communicated the accusation against Ishmael only to other agents and employees. Absent the essential element of publication, there can be no cause of action for slander, regardless of the ultimate truth of the communication. *Magnolia Petroleum, supra; Starr v. Pearle Vision, Inc.,* 54 F.3d 1548 (10th Cir.1995); *Thornton, supra,* 36 P.3d at ¶ 11. We therefore affirm summary judgment on the slander and defamation claim.

10. During his deposition testimony, Ishmael explained that he met with Andrew only one time, January 9, 2002, and he agreed with Andrew's notes from that meeting which stated: "(p)resent were [Andrew, Ishmael], Lisa Steinmeyer, a court reporter, Joseph Efird, and Allen Pennington of human resources."

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

¶ 19 In deciding claims for intentional infliction of emotional distress, Oklahoma follows the Restatement (Second) of Torts § 46: "One who by extreme or outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." To establish a prima facie case of intentional infliction of emotional distress, a plaintiff must demonstrate: (1) that the tortfeasor acted intentionally or recklessly; (2) that the tortfeasor's conduct was extreme and outrageous; (3) that plaintiff actually experienced emotional distress; and (4) that the emotional distress was severe. *Breeden v. League Services Corp.*, 1978 OK 27, 575 P.2d 1374, 1376–78. As a threshold matter, courts should determine whether the conduct at issue is sufficient under the extreme and outrageous standard as a matter of law. *Id.* That is, they should determine whether a reasonable person could find that the conduct is so offensive "as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* The circumstances surrounding the conduct affect whether the conduct is reasonable. *Eddy v. Brown*, 1986 OK 3, 715 P.2d 74.

¶ 20 At issue here are Andrew's declarations to Ishmael, in the course of an investigation, that Andrew believed Ishmael was the perpetrator and that Andrew believed Ishmael was a liar. In the context of a workplace investigation into the dangerous contamination of an employee's drink, this conduct is not outrageous, atrocious, or beyond all possible bounds of decency as a matter of law. This court, as well as the the Oklahoma Supreme Court and the Tenth Circuit Court of Appeals, applying Oklahoma law, have affirmed summary judgment on facts nearly identical to those in this case. See *Eddy, supra; Haynes v. South Community Hosp. Management, Inc.*, 1990 OK CIV APP 40, 793 P.2d 303, 306–307; *Merrick, supra*, 911 F.2d 426; *Starr v. Pearle Vision, Inc., supra*, 54 F.3d 1548.[11] Having found Andrew's conduct was not outrageous as a matter of law under the circumstances here, we affirm summary judgment on Ishmael's claim for intentional infliction of emotional distress.

AFFIRMED.

MITCHELL, P.J., concurs, and ADAMS, J., concurs in result.

---

11. In *Starr v. Pearle Vision,* the court noted that the defendant's "alleged pointed and stentorian questions, posed as they were in the context of an employer's investigation of embezzlement, do not cross the bounds between what is merely rude and objectionable and what is actionable." 54 F.3d at 1559.