Question Submitted by: The Honorable Mike Ritze, State Representative District 80
2017 OK AG 13
Decided: 12/13/2017
Oklahoma Attorney General Opinions

Cite as: 2017 OK AG 13, __ __

 

¶0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:

1. May a hospital refuse to grant hospital privileges to a licensed physician based on the physician not holding a medical board certification?
2. Is it a violation of 42 C.F.R. § 482.12(a)(7), which pertains to the receipt of Medicare and Medicaid funds, for a hospital to refuse to grant hospital privileges to a physician for not holding a medical board certification?
3. Does a hospital's refusal to grant hospital privileges due to lack of medical board certification violate the applicant's property rights under the due process clauses of the Oklahoma or United States Constitutions?
4. Does a hospital's refusal to grant hospital privileges due to lack of medical board certification violate the applicant's equal protection rights under the United States Constitution?
I.
Background
A. Medical Board Certification.
¶1 Because your questions specifically reference board certifications required by hospitals it is important to first understand the meaning of that term. In Oklahoma, allopathic physicians ("MDs") are licensed by the Oklahoma Board of Medical Licensure ("Medical Board") under the authority of the Allopathic Medical and Surgical Licensure and Supervision Act, 59 O.S.2011 & Supp.2017, §§ 480--518.1, while osteopathic physicians ("DOs") are licensed by the Board of Osteopathic Examiners ("Osteopathic Board") under the Osteopathic Medicine Act, 59 O.S.2011 & Supp.2017, §§ 620--645. To maintain a license, MDs and DOs are subject to continuing medical education ("CME") requirements. See 59 O.S.2011, § 495a.1(A)(9); id. § 641(C). MDs must complete 60 hours of category I curriculum, as defined by a certifying organization recognized by the Medical Board, over a three-year period. OAC 435:10-15-1(a)(2). DOs must complete 16 hours every year of American Osteopathic Association category I curriculum, with one hour every two years devoted to the proper prescribing, dispensing, and administering of controlled dangerous substances. OAC 510:10-3-8(a). These are the only professional training requirements set by the two licensing boards.
¶2 Aside from these CME requirements, physicians also may obtain certification in a field of medical specialty through CME curriculum and testing offered by a board of medical specialty. The two primary certifying bodies for MDs and DOs are the American Board of Medical Specialties and the American Osteopathic Association.[1] Certification by a specialty board is not a specialty license but rather a professionally-recognized credential establishing the holder as having successfully completed medical training and passed the certification tests in a specialty field such as dermatology, proctology, or plastic surgery. Physicians with a medical specialty certification can then hold themselves out to their patients as board-certified specialists.
¶3 Finally, in addition to the medical training required to satisfy the State's CME requirements and to obtain a medical specialty certification, health care insurance plans require physicians to have certain credentials in order to participate in insurance networks.[2] 

¶4 As we understand your questions, the certifications to which you refer are those provided by boards of medical specialty. Specifically, you ask whether a hospital may require such a certification as a condition for granting hospital privileges to an MD or DO. 

B. Hospital Privileges.
¶5 Physician hospital privileges allow licensed medical practitioners, including MDs and DOs, to admit, treat, and perform surgery on patients at a hospital facility. Privileges may be granted to physicians who are members of the hospital staff as well as to independent practitioners. See 63 O.S.2011, § 1-707b(A). Privileges are granted by a hospital's governing board pursuant to adopted standards, which must comply with State requirements governing the licensing and operation of hospitals. Id. § 1-707b(A)-(B); OAC 310:667-7-4 & 667-9-5.
¶6 Under Oklahoma law, the State Board of Health promulgates rules and standards for the operation of hospitals. See 63 O.S.2011, § 1-705(A). A license to operate a hospital is issued by the State Commissioner of Health to hospitals that comply with statutory requirements and standards adopted by the State Board of Health. See id. § 1-706(A). With regard to hospital privileges, the administrator in charge of a licensed hospital accepts for consideration applications for hospital privileges submitted by licensed MDs and DOs. See id. § 1-707a(A). The application must be acted upon by the hospital's governing board within a reasonable time and a written report of the board's action must be furnished to the applicant. Id. § 1-707a(B).
¶7 The hospital administrator is required to adopt written criteria for granting hospital privileges, but privileges may not be denied based "solely on the applicant's license, as long as the applicant is licensed to practice" as an MD, DO, podiatric doctor, or health service psychologist. 63 O.S.2011, § 1-707b(A). The granting of hospital privileges is "determined on an individual basis commensurate with an applicant's education, training, experience and demonstrated clinical competence." Id. § 1-707b(B). With regard to the consideration of specialty board certifications in determining whether to grant hospital privileges, the statute provides as follows:
When medical education training and specialty board certification are considerations in the credentialing
[3] and recredentialing of physicians, hospitals and health plans shall give equal recognition to those bodies recognized by the federal government for the training and certification of such physicians. Hospitals and health plans shall not discriminate, on the basis of education, against eligible physicians who have: 
1. Graduated from medical schools and postdoctoral programs approved by either the American Osteopathic Association or the Accreditation Council for Graduate Medical Education; or 
2. Been awarded board eligibility or board certification by specialty boards recognized by either the American Osteopathic Association or the American Board of Medical Specialties.

Id. § 1-707b(C) (emphasis added).
¶8 In addition to this statutory framework, the Board of Health has promulgated rules that set forth standards for granting hospital privileges. These standards require hospital governing bodies to establish written criteria for the appointment of medical staff and independent practitioners with a definition of their hospital privileges. OAC 310:667-7-4. Hospital governing bodies have the "legal right to appoint the medical staff and the obligation to appoint only those physicians and practitioners who are judged by their peers to be qualified and competent in their respective fields." Id. 310:667-9-4(b). Criteria for selecting medical staff "shall be individual character, competence, training, experience, judgment, and comity." Id. 310:667-9-5(d). "Under no circumstances shall the accordance of staff membership or professional privileges in the hospital be based solely upon certification, fellowship, or membership in a specialty body or society. All qualified candidates shall be considered by the credentials committee." Id. 310:667-9-5(e).
¶9 Based on the foregoing, a hospital governing board has express authority to consider a physician's level of training in developing and implementing its standards for granting hospital privileges. This authority is limited only in that (i) a denial of privileges may not be based solely on the applicant's license, and (ii) certification, fellowship, or membership in a medical specialty body or society
[4] cannot be the sole basis for the granting of hospital privileges.
¶10 A fundamental rule guiding the interpretation of statutes is to focus on the language of the statute in light of its general intent. See Sharp v Tulsa Cty. Election Bd., 1994 OK 104, ¶ 9, 890 P.2d 836, 840. "When the language of a statute is plain and unambiguous, no occasion exists for application of rules of construction, and the statute will be accorded meaning as expressed by the language employed." In re City of Durant v. Cicio, 2002 OK 52, ¶ 13, 50 P.3d 218, 221.

A. Hospitals may refuse to grant hospital privileges to a licensed physician based on the physician not holding a medical board certification.
¶11 Here, the statutes and administrative rules governing the process for granting hospital privileges are unambiguous. Hospitals have the legal right to appoint physicians who are judged by their peers to be qualified and competent in their respective fields. OAC 310:667-9-4(b). Hospitals are expressly authorized to consider a physician's level of training as a factor in determining whether to grant hospital privileges. 63 O.S.2011, § 1-707b(B). Hospitals may not deny privileges solely on the basis of a physician's type of license, see id. § 1-707b(A), nor may a physician's certification, fellowship, or membership in a specialty body or society be the sole basis for granting privileges. OAC 310:667-9-5(e). Accordingly, a hospital governing board may refuse to grant privileges to a licensed physician who does not have or maintain medical board certification, but board certification also cannot be the sole basis for according those privileges.
¶12 In your request, you ask about the effect of two recently-added subsections of the MD and DO licensing statutes, which provide as follows, respectively:
Nothing in the Oklahoma Allopathic Medical and Surgical Licensure and Supervision Act shall be construed as to require a physician to secure a Maintenance of Certification (MOC) as a condition of licensure, reimbursement, employment or admitting privileges at a hospital in this state. For the purposes of this subsection, "Maintenance of Certification (MOC)" shall mean a continuing education program measuring core competencies in the practice of medicine and surgery and approved by a nationally-recognized accrediting organization.
59 O.S.Supp.2017, § 492(G).
Nothing in the Oklahoma Osteopathic Medicine Act shall be construed as to require an osteopathic physician to secure an Osteopathic Continuous Certification (OCC) as a condition of licensure, reimbursement, employment or admitting privileges at a hospital in this state. For the purposes of this subsection, "Osteopathic Continuous Certification (OCC)" shall mean a continuing education program measuring core competencies in the practice of medicine and surgery and approved by a nationally-recognized accrediting organization.
59 O.S.Supp.2016, § 622(D).
¶13 These provisions are likewise unambiguous, providing that nothing contained in either licensing statute may serve as the legal basis to require an MD or DO to hold a medical board specialty certification as a condition of granting hospital privileges. The sections do not alter or limit a hospital's authority under other statutes or administrative rules governing those institutions to require specific medical training as a condition of granting hospital privileges. Therefore, these changes in the respective licensing acts do not conflict with the statutes described above and do not diminish the authority provided under Title 63, Section 1-707b(B) for a hospital to refuse to grant privileges to a physician who does not hold a medical board certification.

B. It is not a violation of 42 C.F.R. § 482.12(a)(7), which pertains to the receipt of Medicare and Medicaid funds, for a hospital to refuse to grant hospital privileges to a physician based on the physician not holding a medical board certification. 
¶14 To participate in the Medicare and Medicaid insurance systems, hospitals must, among other things, abide by general standards in the appointment of medical staff. See, e.g., 42 C.F.R. §§ 482.1, 482.12. For instance, a hospital's governing body must determine which categories of practitioners are eligible for appointment, consider the recommendations of existing staff, and ensure the criteria for selection includes individual character, competence, training, experience and judgment. Id. § 482.12(a)(1), (2), (6). Under Section 482.12(a)(7), the governing body must "[e]nsure that under no circumstances is the accordance of staff membership or professional privileges in the hospital dependent solely upon certification, fellowship, or membership in a specialty body or society." Id. § 482.12(a)(7). In your second question, you ask whether a hospital that refuses to grant privileges due to an applicant's lack of medical board certification violates this provision.
¶15 The language of Section 482.12(a)(7) is virtually identical to that of Oklahoma administrative rule 310:667-9-5(e) discussed above. As with the Oklahoma regulations, Section 482.12 allows a hospital governing board to consider professional training in granting hospital privileges, but medical specialty board certifications may not be the sole basis for according those privileges. Therefore, for the same reasons discussed above, a hospital does not violate 42 C.F.R. § 482.12(a)(7) if it refuses to grant hospital privileges based on an applicant not holding a medical board certification. At the same time, board certification also cannot be the sole basis for according those privileges.[5] 

C. Constitutional Questions.

¶16 You also ask whether a hospital's refusal to grant hospital privileges due to an applicant's lack of board certification violates the due process clause of the Oklahoma Constitution and the due process and equal protection clauses of the United States Constitution. These constitutional provisions apply only if the hospital is a state actor. See Maxwell v Sprint PCS, 2016 OK 41, ¶ 22, 369 P.3d 1079, 1091 ("The due process clause of the Oklahoma Constitution protects 'citizens from arbitrary and unreasonable action by the state.'" (emphasis added) (quoting City of Edmond v. Wakefield, 1975 OK 96, ¶ 6, 537 P.2d 1211, 1213)); U.S. Const. amend. XIV, § 1. While public hospitals are State actors, see Don v. Okmulgee Mem'l Hosp., 443 F.2d 234, 236 (10th Cir. 1971), action by a private hospital is treated as State action only if there is a sufficient nexus between the State and the challenged action. See Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974). Whether such a nexus exists would depend on the facts of each particular case.[6] 

¶17 If the hospital is a state actor, the due process clauses of Oklahoma and federal constitutions[7] would be implicated only if the physician has a property right in the granting of hospital privileges. In Oklahoma, Physicians do not have a constitutional right to hospital privileges merely because they are licensed to practice. Theissen v Watonga Mun. Hosp. Bd., 1976 OK 66, ¶ 29, 550 P.2d 938, 942 (citing Hayman v. Galveston, 273 U.S. 414, 416-17 (1927)). Oklahoma law requires only that the hospital administrator "shall accept for consideration" each application for hospital privileges submitted by a licensed applicant. 63 O.S.2011, § 1-707a.[8] In addition to state laws, courts have considered whether a hospital's bylaws create a property interest in hospital privileges.[9] The Oklahoma Court of Civil Appeals has held that procedural rules in a hospital's bylaws do not necessarily create a constitutionally-protected property right in future employment. Thornton v. Holdenville Gen. Hosp., 2001 OK CIV APP 133, ¶¶ 24-25, 36 P.3d 456, 462-63. Based on the foregoing, any analysis of whether the denial of hospital privileges violated an applicant's right to due process will depend on facts particular to each situation. 

¶18 Turning to the applicability of the equal protection clause
[10] to a physician seeking hospital privileges, courts have found that "equal treatment of members of the same class (i.e. physicians) is a fundamental requisite of equal protection rights," and that "[a]ny distinction between such members must be on a reasonable basis." Don, 443 F.2d at 239. Whether a hospital's denial of privileges is reasonable again depends on the particular facts of each situation. For example, in Don the court ruled that a denial based on personal background issues was reasonable and therefore not an equal protection violation. Id. By contrast, in Foster v. Mobile County Hospital Board, the court held that the denial of privileges based on the physician not being a member of the local medical society or endorsed by two staff doctors was not reasonable because neither criterion was related to the quality of care provided at the hospital. 398 F.2d 227, 230 (5th Cir. 1968); see also Shaw v. Hosp. Auth. of Cobb Cty., 614 F.2d 946, 952 (5th Cir. 1980) (per curiam) (quoting Foster and holding that professional training is a relevant consideration in determining the class of physicians who are eligible to practice in a public hospital).
¶19 It is, therefore, the official Opinion of the Attorney General that:
1. A hospital may refuse to grant hospital privileges to a physician based on the physician not holding a medical board certification, 63 O.S.2011, § 1-707b(B), but board certification also may not be the sole basis of according privileges. OAC 310:667-7-4 & 667-9-5.
2. It is not a violation of 42 C.F.R. § 482.12(a)(7), which pertains to the receipt of Medicare and Medicaid funds, for a hospital to refuse to grant hospital privileges to a physician based on the physician not holding a medical board certification.
3. A physician does not have a constitutional right to hospital privileges solely because the physician is licensed to practice medicine. Theissen v Watonga Mun. Hosp. Bd., 1976 OK 66, ¶ 29, 550 P.2d 938, 942. 
4. The due process clause of the Oklahoma Constitution and the due process and equal protection clauses of the United States Constitution only restrict action by the State. Okla. Const. art. II, § 7; Maxwell v Sprint PCS, 2016 OK 41, ¶ 22, 369 P.3d 1079, 1091; U.S. Const. amend. XIV, § 1.
5. While public hospitals are State actors, see Don v. Okmulgee Mem'l Hosp., 443 F.2d 234, 236 (10th Cir. 1971), action by a private hospital is treated as State action only if there is a sufficient nexus between the State and the challenged action, which is a fact-dependent determination. See Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974); Barrows v. Nw. Mem'l Hosp., 525 N.E.2d 50 (Ill. 1988); Greisman v. Newcomb Hosp., 192 A.2d 817 (N.J. 1963). 
6. Oklahoma has created a statutory law interest in being considered for hospital privileges, but not a property interest in being granted such privileges. See 63 O.S.2011, § 1-707a. Whether a hospital's bylaws create a property interest in the grant of hospital privileges and whether the denial of such privileges violates an applicant's right to due process would depend on the particular facts of each situation. 
7. The appropriate standard to be applied to a physician seeking public hospital privileges under the equal protection clause of U.S. Const. amend. XIV, § 1 is the rational basis standard. Don v. Okmulgee Mem'l Hosp., 443 F.2d 234, 239 (10th Cir. 1971). Whether a hospital's refusal to grant hospital privileges violates the equal protection clause would depend upon the facts of each situation. 
MIKE HUNTER ATTORNEY GENERAL OF OKLAHOMA RICHARD D. OLDERBAK ASSISTANT ATTORNEY GENERAL 

FOOTNOTES
[1] Established in 1933, the American Board of Medical Specialties is a non-profit organization made up of 24 certifying boards that develop and implement professional standards for the certification of physicians in their declared specialty. See http://www.abms.org/media/136247/abms_factsheet.pdf (last visited Nov. 15, 2017). The American Osteopathic Association was established in 1901 and its Department of Certifying Board Services administers certification processes for 18 specialty certifying boards, which offer certifications in 29 primary specialties and 77 subspecialties. See https://certification.osteopathic.org/faqs/ (last visited Nov. 15, 2017); http://www.osteopathic.org/inside-aoa/about/Pages/history-of-the-aoa.aspx (last visited Nov. 15, 2017).
[2] The Medicare and Medicaid programs have physician credentialing requirements that are addressed below in the analysis pertaining to your question on 42 C.F.R. 482.12(a)(7).
[3] Beyond the context of granting hospital privileges, the term "credentialing" also encompasses the meeting of certain standards that enable hospitals and health care providers to participate in health insurance benefit programs. See 36 O.S.Supp.2017, § 4405.1(A)(2).
[4] Examples of medical specialty bodies are the American Board of Orthopedic Surgery, the American Board of Pediatrics, the American Board of Psychiatry and Neurology, and the American Board of Radiology. See http://www.abms.org/about-abms/member-boards/ (last visited Nov. 15, 2017).
[5] You also ask generally if taxpayer funds could be withheld from a hospital that violates the statutes or regulations discussed herein. Because we conclude that a hospital's refusal to grant hospital privileges in these circumstances does not violate those provisions, we do not reach that question.
[6] We are not aware of any Oklahoma court having analyzed when a private hospital becomes a state actor, but courts in other jurisdictions have come down on both sides of the issue. See Barrows v. Nw. Mem'l Hosp., 525 N.E.2d 50 (Ill. 1988) (a private hospital's refusal to appoint a physician to its medical staff is not subject to judicial review); Greisman, v. Newcomb Hosp., 192 A.2d 817 (N.J. 1963) (a private hospital that received a large portion of its funds from public sources and operated as a virtual monopoly in its geographical area was subject to judicial review when ruling on applications for staff memberships). More broadly, however, the Oklahoma Court of Civil Appeals has ruled that the mere fact that a private institution is regulated by state law and receives direct or indirect public funding does not elevate it to the status of a state actor. Bittle v. Okla. City Univ., 2000 OK CIV APP 66, ¶ 18, 6 P.3d 509, 516.
[7] The Oklahoma Constitution provides that "[n]o person shall be deprived of life, liberty, or property, without due process of law." Okla. Const. art. II, § 7. The due process clause of the United States Constitution is virtually identical. See U.S. Const. amend. XIV, § 1. Because the provisions have a "definitional sweep that is coextensive," see Maxwell, 2016 OK 41, ¶ 15, 369 P.3d at 1089, our analysis applies equally to both.
[8] See also Ripley v. Wyo. Med. Ctr., Inc., 559 F.3d 1119, 1124 (10th Cir. 2009) (holding that a Wyoming statute that required hospitals to consider an applicant's competency, in addition to the type of degree held, created at most a state law interest in being considered for hospital privileges)
[9] See Moore v. Middlebrook, 96 Fed.Appx. 634, 637 (10th Cir. 2004) (stating neither hospital bylaws nor Colorado statutes created a property interest in medical staff privileges); Babchuck v. Ind. Univ. Health, Inc., 809 F.3d 966, 970 (7th Cir. 2016) (finding under hospital bylaws that the grant of medical privileges was not a contract).
[10] See U.S. Const. amend. XIV, § 1 ("[N]or shall any State...deny to any person within its jurisdiction the equal protection of the laws.").

 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
2001 OK CIV APP 133, 36 P.3d 456, 72 OBJ 3319, 
THORNTON v. HOLDENVILLE GENERAL HOSPITAL
Discussed

 
2000 OK CIV APP 66, 6 P.3d 509, 71 OBJ 1651, 
BITTLE v. OKLAHOMA CITY UNIV.
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1994 OK 104, 890 P.2d 836, 65 OBJ 3055, 
Sharp v. Tulsa County Election Bd.
Discussed

 
2002 OK 52, 50 P.3d 218, 
CITY OF DURANT v. CICIO
Discussed

 
1975 OK 96, 537 P.2d 1211, 
CITY OF EDMOND v. WAKEFIELD
Discussed

 
1976 OK 66, 550 P.2d 938, 
THEISSEN v. WATONGA MUNICIPAL HOSPITAL BOARD
Discussed at Length

 
2016 OK 41, 369 P.3d 1079, 
MAXWELL v. SPRINT PCS
Discussed at Length

Title 36. Insurance

 
Cite
Name
Level

 
36 O.S. 4405.1, 
Credentialing or Recredentialing of Physicians and Health Care Providers Required
Cited

Title 59. Professions and Occupations

 
Cite
Name
Level

 
59 O.S. 480, 
Short Title - Intent and Scope of Act
Cited

 
59 O.S. 492, 
Practice of Medicine and Surgery - Title - Hospital
Cited

 
59 O.S. 495a.1, 
Demonstration of Licensee's Continuing Qualification to Practice Medicine and Surgery
Cited

 
59 O.S. 620, 
Short Title
Cited

 
59 O.S. 622, 
Practice Without License - Liability of Hospital
Cited

Title 63. Public Health and Safety

 
Cite
Name
Level

 
63 O.S. 1-705, 
Rules and Standards - Inspection - Application of Other Laws - Community-Based Programs and Services to be Provided
Cited

 
63 O.S. 1-707a, 
Staff Privileges - Applications - Psychologists
Discussed

 
63 O.S. 1-707b, 
Granting of Staff Privileges - Criteria
Discussed at Length